KRAFT-PHENIX CHEESE CORPORATION *v.* SPELCE.

4-4883

Opinion delivered January 17, 1938.

*Owens, Ehrman & McHaney* and *John M. Lofton, Jr.,* for appellants.

*D. H. Howell,* for appellee.

SMITH, J. About 2:30 or 3 o'clock on the afternoon of August 11, 1936, appellee purchased in Van Buren, Arkansas, a glass bottle of sandwich-spread from the Kroger Grocery & Baking Company, who are retail dealers in such products. He testified that the bottle containing the sandwich-spread was selected by the manager of the grocery store, who immediately placed it in a sack containing a head of lettuce, a loaf of bread, and some meat and cookies, and handed the sack to appellee, who carried it to his car and placed it on the driving seat. Appellee further testified that he went directly home, and upon arriving there placed the sack on the dining table, where it remained undisturbed until sandwiches were made therefrom and eaten. At the time the sandwiches were made appellee had had no opportunity to discover the condition of the bottle. Appellee left home after placing the sack on the table, and did not return until just before the sandwiches were made. The sack had not been moved during his absence, and was found on his return just where he had placed it. His wife took the bottle from the sack, and his six-year-old daughter removed the cap on top of the bottle. Appellee made sandwiches by putting portions of the spread on bread, and he and his child began to eat them. He discovered something gritty as he ate the sandwich, and the child found a small sliver of glass on the sandwich he had prepared for her. He examined the bottle and found that "It was chipped inside and cracked from the top down to the circle." He examined the sliver of glass and found that it fitted into a chipped place at the top of the bottle. He had handled the sack carefully and nothing had occurred since receiving it to break the bottle.

At about 2 o'clock the next morning sharp pains developed in appellee's abdomen, which were soon followed by an attack of diarrhea, and his bowels moved thirteen times within the next twenty-four hours. He noticed quite a bit of blood in the bowel movement, and the diarrhea continued in diminished degree for about

eleven or twelve days. Since then he had recurring attacks, during which he would pass bloody mucus. He detailed his subsequent symptoms, which we do not recite, as no contention is made that the judgment which he recovered is excessive, if liability therefor was established.

Appellee brought suit to recover damages to compensate his injury and suffering against both the Kroger company and the Kraft-Phenix Cheese Corporation as the manufacturer of the cheese-spread, and recovered judgment against both defendants.

Recovery was sought on the ground of negligence, and the Kroger company, the local dealer making the sale, sought to excuse itself from that charge by showing the manner in which the bottle had been handled after it came into its possession. This testimony was to the effect that the bottle had not been broken and that nothing had occurred since the bottle came into its possession which would have caused the crack. No testimony was offered on behalf of the manufacturer.

The instructions submitting the case to the jury are not complained of. The insistence for the reversal of the judgment is that there was no showing of negligence on the part of either the dealer or the manufacturer, and that certain incompetent testimony was admitted in evidence.

The bottle in question has been submitted for our examination, and it is quite apparent that at some time and in some manner it was cracked, and there is a chipped place at its top. There is no explanation as to how or when this occurred. It is insisted that the crack in the bottle was as apparent to appellee as it was to the dealer, and that if appellee did not himself break the bottle he had a better opportunity than the dealer had to discover that it was broken, and that he was, therefore, guilty of contributory negligence in not discovering its condition. This question of fact was submitted to the jury and is concluded by the verdict. Upon that issue appellee testified that the bottle was removed from the sack and the sandwiches made and eaten about "dusky dark," as he expressed it, and that the light had not been lit. There were no electric lights in appellee's home. This testi-

mony is, in our opinion, sufficient to support the finding of the jury that appellee was not guilty of contributory negligence in failing to discover the condition of the bottle.

There are almost an infinite number of cases dealing with the question of the liability of both the dealer and the manufacturer of foods and drinks intended for immediate human consumption, and it would be a work of supererogation to attempt a review of them and to point out the distinction made between the cases where the dealer or manufacturer, or both, have been held liable upon the sale of unwholesome or harmful foods or drinks, from the other cases in which one or both have been exonerated from liability. Many of these cases are cited in the notes to the annotated cases of *O'Brien* v. *Louis K. Liggett Co.*, 47 A. L. R. 146, and *Fisher* v. *Washington Coca-Cola Bottling Works, Inc.*, 105 A. L. R. 1034.

A well-considered and somewhat similar case to the instant case is that of *Linker* v. *Quaker Oats Co.*, 11 Fed. Supp. 794. This opinion cites a number of the leading cases applicable to the points here in issue. In that case Mrs. Linker, the plaintiff, had purchased from the Kroger Grocery & Baking Company, a retail dealer, an original unbroken package of rolled oats for immediate consumption, which contained particles of glass. Mrs. Linker cooked and ate a portion of the oats. In eating the food she discovered a gritty substance in her mouth, and in about five hours began to experience pains and a burning sensation in her stomach, and thereafter suffered in a manner similar to the suffering which appellee has described in this case. A verdict was returned against both the dealer and manufacturer, as was done in the instant case.

The presiding judge of the federal court of the northern district of Oklahoma, in passing upon the motion for a new trial, wrote the opinion above cited. In that case the manufacturer offered testimony showing the manner in which the food had been prepared for shipment and subsequent sale and the care exercised by it in that respect, "which evidence (as the opinion recites) might well have caused a verdict in its favor," but the presiding

judge concluded that the jury had the right to find "that the presence of deleterious substance in a packaged food occurs through some negligent act of omission or commission on the part of the agents of the manufacturer." A number of cases there cited, several of which are annotated citing many others, support the conclusions announced.

The view of the court was that the glass could have gotten into the package only through someone's negligence, and that its presence therein made a *prima facie* case in the absence of explanation, and that the explanation of the manufacturer showing that he had been guilty of no negligence made a case for the jury. This view accords with the opinions of this court which are reviewed in the recent case of *Coca-Cola Bottling Co. of Southeast Arkansas* v. *Bell,* 194 Ark. 671, 109 S. W. 2d 115.

In the case last cited we reversed a judgment, in which the consumer, in drinking a bottle of Coca-Cola, had swallowed a fly, because the trial court had charged the jury that the presence of a deleterious substance in the bottle was sufficient to make a *prima facie* case of negligence, and shifted to the manufacturer the burden of proving that there was no negligence in cleaning and refilling the bottle with the drink and in inspecting them after they were filled, and that proof of the manufacturer's plan and system to exercise every precaution was not sufficient alone to meet the burden to overcome this *prima facie* case. In reversing the judgment on account of this instruction we said: "This instruction declares as a matter of law what should have been submitted to the jury as a question of fact, that is, whether the testimony as to the care used by the manufacturer had overcome the *prima facie* presumption arising from the presence of the fly in the bottle. This instruction tells the jury as a matter of law that this testimony as to care in bottling and inspecting 'is not alone sufficient to meet the burden of proof cast upon the defendant and overcome the *prima facie* case.' It was for the jury to find, and not for the court to say, whether the testimony had overcome the *prima facie* case of negligence arising from the presence of the fly in the bottle."

It was not error, therefore, to submit to the jury the question of the manufacturer's negligence in the instant case, and the finding of the jury that it was negligent cannot be said to be unsupported by sufficient testimony.

In this Linker case, *supra,* the motion for a new trial was granted the Kroger company, the dealer. In that connection the court said: "The evidence clearly established that the package of oats was unopened at the time this retailer sold it to plaintiff. It was a product of a reputable manufacturer, packed by such manufacturer (and under the manufacturer's brand), and not by this defendant. The latter had no opportunity for inspection without breaking the sealed package, and, being the product of a reputable manufacturer, there was no duty upon the retailer to open the package and make an examination of its contents. The great weight of authority is to the effect that under the circumstances here shown there is no negligence on the part of the retailer (citing numerous cases)."

Here, the food had been bottled by a reputable manufacturer, but it was not necessary to unseal or unwrap the bottle to discover its condition, as it was neither sealed nor wrapped. Its condition was otherwise discoverable. It is true the Kroger company offered testimony showing due care in handling the bottle, which, if believed, would have established the fact that it had not been broken while in its possession; but the question remains, even though this testimony was accepted as true, whether due care had been used in discovering its obvious condition. Appellee's testimony is to the effect that the bottle had not been cracked or broken after it came into his possession, and, if this testimony is accepted as true, it must necessarily be true that the bottle was cracked or broken before it came into his possession, and, if so, the inference was not unwarranted and unsustained that the damage was caused by the manufacturer in packing and capping the bottle, and that the defect should have been discovered by the manufacturer before packing and shipping it, and, also, by the dealer before selling it. The testimony above recited explains why the jury, after so finding, did not also find that appellee was guilty of con-

tributory negligence in failing to discover the condition of the bottle.

We conclude, therefore, that a case was made for the jury upon the question of the negligence of both the manufacturer and the dealer.

It is insisted that the testimony does not sufficiently show that appellant, Kraft-Phenix Cheese Corporation, was the manufacturer. But we think it does. The bottle contained a label reading as follows: "Miracle Whip Sandwich Spread. 8 fluid ounces. A new kind of spread created by Kraft. Consisting of eggs, salad oil, vinegar, sugar, salt, spices, cereal and pickles. Kraft-Phenix Cheese Corporation. General office Chicago, Illinois."

In addition, Marion Smith, a clerk in the dealer's store, testified in its behalf that he was familiar with the products of the Kraft-Phenix Cheese Corporation, and knew how these products were considered among merchants. This testimony was introduced to show that the cheese-spread had been manufactured by a reliable company, and its effect was to establish the identity of the manufacturer.

It is insisted finally that error was committed in admitting testimony on behalf of appellee to the effect that he was not afflicted with syphilis. At the request of appellants, appellee submitted himself to the examination of Dr. M. E. Foster. The doctor placed appellee in a hospital and made a most thorough examination, which convinced him that appellee's condition was not attributable to the fact that he had swallowed particles of chipped glass, and he so testified. In this connection, it may be said that another doctor, testifying as an expert, expressed the contrary opinion. Dr. Foster made a written report, from which he testified. The report of the blood examination contained the statement: "Kahn 4 plus positive." Dr. Foster was asked, on his direct examination, if he had made a blood test, and he said that he had. He was asked, on his cross-examination, the significance of the statement: "Kahn 4 plus positive," and he answered that it indicated syphilis. In rebuttal of this testimony it was shown that just prior to the trial another examination of appellee's blood was made at Dr. Foster's

own clinic by a person described as the head technician, and that this examination showed a negative result regarding syphilitic infection.

Appellants insists that appellee injected into the case the question whether appellee had syphilis, and invoke the rule that where one cross-examines a witness upon a collateral matter the answers, whether true or false, are conclusive of the inquiry and cannot be subsequently contradicted by the party putting the question. We cannot say, however, that this impeaching testimony contradicting the report of Dr. Foster was a collateral matter, in view of the fact that Dr. Foster had been asked about the condition of appellee's blood, although he was not asked on his direct examination whether appellee had syphilis. If the condition of appellee's blood was of sufficient importance to be the subject-matter of examination and of testimony, it was not incompetent to show that he did not have syphilis. We conclude, therefore, that the trial court did not abuse its discretion in admitting the testimony to that effect.

Upon the whole case we find no error, and the judgment against both appellants must be affirmed, and it is so ordered.

GRIFFIN SMITH, C. J., dissenting.