H. J. HEINZ COMPANY *v.* DUKE.

4-5074

Opinion delivered May 16, 1938.

*McRae & Tompkins*, for appellant.

*W. F. Denman, Joe Norbury* and *Tom W. Campbell*, for appellee.

DONHAM, J. Appellant, Heinz Company, is a Pennsylvania corporation, not authorized to do business in Arkansas. Appellant, Hollis E. Luck, operates Luck's Tourist Camp about one mile south of Hope, in Hempstead county, Arkansas, and, in connection with his camp, operates a cafe. Appellee, Roy L. Duke, lives at Prescott, Nevada county, Arkansas, and is an automobile salesman for De Lamar Chevrolet Company.

On November 2, 1937, between four and five o'clock in the afternoon, Duke ate a portion of a can of Heinz chili at Luck's said tourist camp in Hope. Mrs. Lucille Luck, an old friend of Duke's, served the chili to Duke, and stood across the counter talking to him while he ate the chili. Duke made no complaint about the chili, but did not eat it all. After eating the chili, Duke went on about his business, but at one o'clock that night became sick and began vomiting. He went back to bed, but had a headache the balance of the night. He drank a cup of coffee next morning and vomited it up. He worked the next day, but felt bad and threw up his lunch. That afternoon his bowels began running off. That night he tried to eat supper and got sick—had painful cramps and had to be put to bed. He was in bed from Wednesday night, November 3, 1937, to November 29th, or 30th, 1937. During a portion of this time he was very ill. At times he was unconscious. He suffered greatly from what his physician diagnosed as food poisoning.

Duke filed the present suit for damages on December 1, 1937, making H. J. Heinz Company, the manufacturer, and Hollis E. Luck, the retailer, defendants.

The allegation of negligence relied on as to Heinz Company was as follows:

"Heinz Company negligently prepared, packed and sold said chili for human consumption when it knew or should have known it contained some nauseating, poisonous substance which rendered the chili dangerous as a food and unfit for human consumption."

The allegation of negligence relied on as to Luck was as follows:

"Luck negligently sold said chili to plaintiff when he knew or should have known it contained some nauseating, poisonous substance and was unfit for human consumption."

Duke caused a summons for Heinz Company to be served on the State Auditor, and another on the Secretary of State, contending that Heinz Company was doing business in Arkansas without authority, and that such service was authorized under § 2250 of Pope's Digest.

Defendant, Heinz Company, appearing specially and limiting its appearance solely to its motion, filed its motion to quash the service on the ground that it was not doing business in Arkansas. Testimony was taken upon this question; and the court overruled the motion to quash, and defendant, Heinz Company, duly excepted.

On the motion to quash, defendant, Heinz Company, introduced C. A. Thompson, manager of the Memphis Branch of Heinz Company, who testified that the company did not do business in Arkansas, other than to send its traveling salesmen over the state to solicit orders, which were sent to Memphis for acceptance or rejection by the Memphis Branch. The company does not maintain a branch office in Arkansas, all orders being filled and all shipments being made from the Memphis Branch. The company does not maintain an office of any kind in Arkansas, nor does it maintain a warehouse or place to store goods in Arkansas. All goods are sold f.o.b. Memphis. The salesmen are authorized to accept payment when a customer desires to pay them. All forced collec-

tions are made out of Memphis. Salesmen take samples of the Heinz products with them as they go about over the state soliciting orders, but do not carry merchandise other than these samples. Salesmen are not permitted by the company to sell direct from their cars or to peddle. The company discharges a salesman who refuses to obey instructions. L. J. Bryson, who worked as a salesman a few months in 1934, was discharged because he would not follow instructions. Bryson testified that he sold goods from his car, which goods were shipped to him at Fort Smith; but that he only worked four or five months in 1934. He admitted that he was discharged for disobeying the instructions of the company. One of the company's agents, a Mr. Dare, made one isolated sale of oven baked beans to one Odell Garrett in February or March of 1937, and delivered same at the time of the sale from his car. At the time of the trial, Dare was not in the company employment. C. A. Thompson, manager of the Memphis Branch of Heinz Company, testified that he knew nothing of this isolated sale by Dare to Garrett.

The record contains nothing, other than as above stated, to show that Heinz Company was doing an intrastate business in Arkansas.

Upon a trial of the issues, a verdict and judgment were rendered for the plaintiff against both defendants in the sum of $12,500. Motion for new trial was filed, which motion was overruled, and thereupon defendants prayed and were granted an appeal to this court.

At every stage of the proceedings Heinz Company preserved its objections to the service and denied the jurisdiction of the court. The first question, therefore, to be determined on this appeal is whether the trial court erred in overruling the motion of Heinz Company to quash service. As hereinabove stated, the service was had upon the Auditor and Secretary of State under the provisions of act 215 of the Acts of 1927, a part of the act being § 2250 of Pope's Digest. Section 2 of said act provides: ''This act shall not be effective in cases where

its enforcement conflicts with the power of Congress or federal laws to regulate commerce between the states."

Said act does not and could not authorize service on a foreign corporation doing an exclusive interstate business in Arkansas. The rule is stated in the case of *Philadelphia & Reading Ry. Co.* v. *McKibbin,* 243 U. S. 264, 37 S. Ct. 280, 61 L. Ed. 710, as follows: "A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there."

In the case of *Order of Railway Conductors of America* v. *Bandy,* 177 Ark. 694, 8 S. W. 2d 448, the service of summons was on the Insurance Commissioner; and this court held that since it affirmatively appeared that the appellant, a foreign corporation, had not domesticated itself, and there was no attempt to acquire jurisdiction by seizing any of its property in this state, no jurisdiction had been acquired or could be acquired and, therefore, a writ of prohibition should be awarded. This holding of the court was subsequently approved in the cases of *Caldwell* v. *Dodge,* 179 Ark. 235, 15 S. W. 2d 318, and *Stewart* v. *California Grape Juice Corporation,* 181 Ark. 1140, 29 S. W. 2d 1077.

Formerly it was held by this court that in cases where there was no proper service of process, the party appealing from the judgment of the court, even though he had done all he could to protect himself at every step in the progress of the trial by reserving his rights, yet he entered his appearance by taking the appeal. However, in the case of *Anheuser-Busch, Inc.* v. *Manion,* 193 Ark. 405, 100 S. W. 2d 672, the court held that where there was no proper service of summons, if appellant had protected himself at every step in the progress of the trial by reserving his rights and proceeding only as required, he did not enter his appearance by appealing from an adverse judgment.

The authorities seem to be unanimous in holding that the solicitation and obtaining of orders for goods within a state by a salesman of a foreign corporation for

goods to be shipped into the state to the purchasers is not doing business within the state so as to render the corporation amenable to service of process therein. *Peoples Tobacco Co.* v. *American Tobacco Co.*, 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537; *Robertson* v. *Southwestern Co.*, 136 Ark. 417, 206 S. W. 755; *Coblentz & Logsdon* v. *L. D. Powell Co.*, 148 Ark. 151, 229 S. W. 25; *Sillin* v. *Hessig-Ellis Drug Co.*, 181 Ark. 386, 26 S. W. 2d 122; 60 A. L. R. 1030, *et seq.*; 101 A. L. R. 133, *et seq.*

It is not even contended that salesmen for the appellant company had permission of the company to make sales direct from their cars; and as hereinabove stated, neither the company nor any salesman of the company had an office, warehouse or place of business of any kind in Arkansas. The instance of the one isolated sale by an agent of the company in February or March of 1937, being the sale of a case of oven-baked beans to Odell Garrett, a groceryman of Prescott, this being nine months or more before the suit was filed, the sale having been made in violation of the orders and directions of the company, was not sufficient to constitute doing business in Arkansas so as to render the company amenable to service of process in this state. Nor is the evidence to the effect that L. J. Bryson, a former agent of the company, sold goods from his car and made deliveries at the time the sales were made three or four years before the suit in the instant case was filed, sufficient to show that the company was doing business in this state at the time the suit was filed so as to render the company amenable to service of process in Arkansas.

In the case of *Peoples Tobacco Co.* v. *American Tobacco Co.*, 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537, the rule is stated as follows: "The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted."

In view of what we have said, we must hold that Heinz Company was not doing business in Arkansas at the time the suit in the instant case was filed; and that service of process on the Secretary of State and Auditor was, therefore, not valid service. The trial court, therefore, erred in not sustaining the motion of the company to quash the service.

The next question which must be considered is that of whether Hollis E. Luck, the dealer who owned the cafe at which appellee purchased and ate the chili, is liable. Mrs. Ray Luck, his sister-in-law, testified: "I remember the occasion when I served a can of Heinz chili to Mr. Duke at the tourist camp. I got the can off the shelf, gave it to the cook and he heated it. I did not see anything the matter with the chili. I stood there and talked to Mr. Duke while he ate the chili. I do not recall how much of the chili he ate. He made no complaint about the chili while he was eating it. I have known him all my life—we are good friends—and I would not have served the chili to him if there had been anything the matter with it."

J. S. Webb testified: "I was cooking for Mr. Luck last November, and I know Mr. Duke. I remember Mrs. Luck's bringing back to me a can of Heinz chili to heat for Mr. Duke. I opened the can and heated it. There was nothing the matter with the chili that I could tell from looking at it. I would not have permitted it to be served to a customer if there had been anything wrong with it. I noticed nothing slimy or out of the ordinary or different about that can of chili from other cans."

The suit was based upon an allegation of negligence against Luck; and recovery was had solely upon the theory of negligence.

In the case of *Coca-Cola Bottling Co.* v. *Swilling*, 186 Ark. 1149, 57 S. W. 2d 1029, also in the case of *Great Atlantic & Pacific Tea Co.* v. *Gwilliams*, 189 Ark. 1037, 76 S. W. 2d 65, this court quoted the rule laid down in § 29 of the chapter on Food in 11 R. C. L., page 1124, as follows:

"The retailer owes to the consumer the duty to supply goods packed by reliable manufacturers, and such as are without imperfections that may be discovered by an exercise of the care, skill and experience of dealers in such products generally. This is the measure of the retailer's duty, and, if he has discharged it, he should not be mulcted in damages because injuries may be produced by unwholesomeness of the goods. As to hidden imperfections, the consumer must be deemed to have relied on the care of the packer or manufacturer or the warranty which is held to be implied by the latter."

In the Gwilliams case, the court further said:

"The theory now is that, in the handling or sale of standard packaged goods, inspection is not required, expected, or anticipated of the dealer. Such inspections could not be made, in most instances without destroying or damaging package protective coverings."

The retail dealer is not a guarantor, and, if he were, this case is not founded upon that theory. He is charged with the exercise of ordinary care to sell sound and wholesome products. That is, he must exercise such care as a person of ordinary prudence would exercise under the same or similar circumstances for the protection of customers against impurities or contamination that would be discoverable by the exercise of such care. But, as stated in the Gwilliams case, *supra:* "This cannot mean, however, that the retail dealer must make or apply such tests as would in every case operate to insure absolute safety. Hidden or concealed imperfections or contaminations might require microscopical tests or chemical analysis for their discovery. Under present conditions, such requirement would prove so burdensome that many articles in ordinary use could not be handled by the ordinary dealer, and consumers would be denied the right to buy such products. In other words, such a test, if applied under the ordinary conditions, would be equal to requiring the dealer to become an insurer of the absolute perfection of the commodity sold. The test should not be higher than that commonly or usually practiced by careful dealers under the same con-

ditions and circumstances, which is at least as high as the consumer expects, or has the right to expect of his groceryman or food dealer.''

See, also, *Kraft-Phenix Cheese Corporation* v. *Spelce*, 195 Ark. 407, 113 S. W. 2d 476.

Unless the appearance of the chili was such as to put the servants of appellant Luck on notice that there was something wrong with it, no extra precaution with reference to same was required. It is true that appellee testified that after he had noticed the taste of the chili he noticed that the chili had a kind of slimy look. He had eaten a considerable portion of the chili before he noticed this. Servants of Luck who prepared and served the chili testified, as hereinabove shown, that it was no different in appearance from chili served from other cans. The rule that retailers are entitled to rely upon the assumption that proper care was used by the manufacturer in making and canning the chili applies.

Under the circumstances, we must, therefore, hold that the evidence was not sufficient to sustain the verdict against appellant Luck.

The judgment is, therefore, reversed and the cause dismissed as to Hollis E. Luck. The judgment as to H. J. Heinz Company is reversed and the cause remanded with directions to the trial court to sustain the motion to quash the service of summons, and for further proceedings not inconsistent herewith.