Ralph McAVOY, Plaintiff,

v.

**TEXAS EASTERN TRANSMISSION CORPORATION, H. C. Price Corporation, and Brown and Root, Inc., Defendants.**

**Fidelity and Casualty Company of New York, Intervenor.**

Civ. No. 861.

United States District Court
W. D. Arkansas,
El Dorado Division.
June 29, 1960.

McMath, Leatherman, Woods & Youngdahl, Little Rock, Ark., for plaintiff.

Mehaffy, Smith & Williams, Wright, Harrison, Lindsey & Upton, Little Rock, Ark., Shackleford & Shackleford, El Dorado, Ark., for defendants.

Spencer & Spencer, El Dorado, Ark., for Intervenor.

HENLEY, District Judge.

On motion of third-party defendant to dismiss third-party complaint, which motion has been submitted upon depositions and written briefs.

This is a personal injury suit filed originally in this Court by Ralph McAvoy, a citizen of Arkansas, against three foreign corporate defendants, including Texas Eastern Transmission Corporation, hereinafter called "Texas Eastern," to recover for personal injuries sustained by the plaintiff as a result of a pipeline explosion which occurred in Kentucky.

The complaint alleges that plaintiff's injuries and damage were due in part to a defective valve furnished by Texas Eastern, and in part to other alleged negligent acts or omissions of Texas Eastern and its fellow defendants. The valve in question was manufactured by Rockwell Manufacturing Company, a Pennsylvania corporation, hereinafter called "Rockwell," and was sold by Rockwell to Texas Eastern in Louisiana.

After motions to dismiss filed by the original defendants had been overruled by the Court, Texas Eastern filed a third-party complaint against Rockwell alleging in substance that, if Texas Eastern should be adjudged liable to plaintiff, Rockwell would be liable over to Texas Eastern for all or part of plaintiff's claim. Rule 14, F.R.Civ.P., 28 U.S.C.A.

Rockwell has never qualified to do business in Arkansas and has never designated any agent for service here. Since the valve was neither manufactured nor sold in Arkansas, and since the accident out of which the principal suit arose occurred in Kentucky, Texas Eastern made no effort to subject Rockwell to the jurisdiction of this Court by substituted service on the Arkansas Secretary of State under the provisions of Act 347 of 1947, Ark.Stats.1947, § 27–340.[1] Rath-

---

1. Act 347 of 1947 provides that where a foreign corporation not qualified to do business in Arkansas does any business or performs any work or service in this

er, Texas Eastern caused a third-party summons to be served on J. E. B. Lundy, an employee of Rockwell who is stationed in Little Rock, Arkansas, and who works out of Rockwell's district office in Tulsa, Oklahoma. The statutory basis for this service was Ark.Stats. 1947, § 27–350, which provides that where the defendant is a foreign corporation having an agent in this State, service may be had upon such agent.

Subsequently, Rockwell filed a motion to dismiss the third-party complaint on the ground that it is a foreign corporation which maintains no office in Arkansas and does no business in this State and is not amenable to the jurisdiction of the courts of Arkansas, including the Arkansas federal courts. It is further asserted that Mr. Lundy was not an officer or agent of Rockwell authorized to accept service of process.

To sustain jurisdiction, Texas Eastern contends that Rockwell has, or has had, such contacts with Arkansas as makes Rockwell amenable to suit here under the principles stated in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Travelers Health Ass'n v. Commonwealth of Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154; and Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485.

The depositions before the Court are those of Mr. Lundy, who has been mentioned, and Mr. Paul C. Kreuch, who is one of the vice presidents of Rockwell.

From those depositions the Court finds the following facts:[2]

Rockwell is engaged in the manufacture and sale of valves, meters, and power tools, together with accessory equipment and supplies. Its sales organization consists of a number of "divisions," four of which sell products in Arkansas. Principal among those four divisions is the Meter and Valve Division, which, as its name implies, sells meters and valves, except that water meters are sold to municipally owned water plants by the Municipal and Utility Division. The Delta Division and the Walker-Turner Division sell power tools. From the standpoint of territorial organization, the divisions above mentioned operate through regional and district offices, none of which is located in Arkansas. It appears that district office employees are responsible to the regional offices, and that regional employees are under control of the main office at Pittsburgh.

Rockwell maintains no stocks of products or warehouses in Arkansas and has no office here. It does no advertising in Arkansas publications, although it does advertise in trade journals some of which doubtless circulate in this State. In 1959 Rockwell's gross sales of products in Arkansas accounted for %10ths of one per cent of its total sales throughout the country.

Orders from Arkansas customers are procured through the solicitation of employees of the various divisions. Although such employees hold various titles,[3] they are essentially traveling sales-

state, the doing of such business or the performing of such work or service shall amount to 'the appointment of the Secretary of State as agent for service in any action arising out of the doing of such business or the performing of such work or service, and that jurisdiction of the corporation may be obtained by serving the Secretary of State, provided that a notice of the service and a copy of the process are sent forthwith by registered mail by the plaintiff, or his attorney, to the defendant at its last known address.

2. The facts found by the Court may not be all of the facts disclosed by the depositions, but they are the facts which the Court considers it necessary to state in order to dispose of the jurisdictional question presented.

3. For example, Mr. Lundy and other salesmen of the Meter and Valve Division are called "sales engineers." According to Lundy a "sales engineer" is nothing more than a salesman who has enough engineering or mechanical training to enable him to explain the construction and operation of the products which he sells, and who is able to make suggestions with regard to repairs and servicing and who may be able to make minor repairs or adjustments.

men. The salesmen do not sell directly to customers; they merely solicit orders which are transmitted to higher authority for acceptance or rejection. The salesmen have no authority to accept orders, vary prices, arrange credit, or make collections. At times they carry with them on their rounds literature which they may distribute to customers or prospective customers. From time to time a salesman may be accompanied on a trip by one of his superiors. Naturally, the salesmen try to promote the business and goodwill of the company. They receive customer complaints, and within the limits of their capabilities, try to remedy them. If a complaint or problem cannot be handled by a salesman, he refers the matter to his superiors.

The sales of the Valve and Meter Division and of the Municipal and Utility Division are made directly to the ultimate purchasers. Sales of the Delta Division and of the Walker-Turner Division are made to distributors or wholesalers, who purchase outright from Rockwell for re-sale. No Rockwell products are placed on consignment in Arkansas. Rockwell products are sold with a one-year warranty against defective materials or workmanship, and occasionally it is necessary for an employee of Rockwell to come into the State to make some repairs called for by the warranty. Mr. Kreuch stated, however, that he knew of no repairs that have been made in Arkansas during the past two years.

Products sold to Arkansas customers, except gas meters, are delivered to the purchasers by common carriers and are installed by the purchasers. Gas meters, because of their rather delicate construction, are shipped in trucks belonging to Rockwell, and are delivered directly to the customers for installation. None of the Rockwell trucks is garaged in Arkansas, and the trucks come into the State only in the course of making interstate deliveries.

Mr. Kreuch deposed that Rockwell does not send any demonstrators into Arkansas to demonstrate Rockwell products. Mr. Lundy stated, however, that when Rockwell makes a large initial sale to a single customer, it may conduct a "school" for the customer's employees to familiarize them with the product purchased. Lundy also stated that when the Southwest Water Works Convention is held in Little Rock, Rockwell's Municipal and Utility Division sets up a display of its wares. These activities described by Lundy are infrequent and irregular.

Lundy is the only employee of Rockwell who lives in Arkansas. His territory covers the northern two-thirds of Arkansas and part of Eastern Oklahoma. Another "sales engineer" representing the Valve and Meter Division who works out of the Shreveport, Louisiana, district office covers the southern third of Arkansas. The Municipal and Utility Division has one salesman who covers Arkansas from headquarters in another State. The Delta Division has two salesmen who operate in Arkansas, and the Walker-Turner Division has one. On occasions, according to Lundy, a service employee of Rockwell may come into Arkansas to supervise the installation of a large purchase.

Mr. Lundy works out of his home in Little Rock where he has a desk and typewriter belonging to Rockwell. Rockwell furnishes him an unmarked, rented car, the expenses of which are ultimately borne by Rockwell and by the rental service which owns the vehicle. Lundy pays his own telephone bill, except that he is reimbursed for long distance calls made on company business. Mr. Lundy's business cards reflect that he is a "sales engineer" for the Meter and Valve Division of Rockwell Manufacturing Company, P.O. Box 1807, 3130 Sand Springs Road, Tulsa, Oklahoma. In the upper left-hand corner the cards reflect that Lundy's home address is 112 Dickson Drive, Little Rock, Arkansas, and that his home telephone number is Mohawk 6-7218. The Court might add that the current Little Rock telephone directory lists Mr. Lundy's name and telephone number as shown above. The directory has no listing for Rockwell Manufacturing Company.

In summary, the Court feels that Rockwell's Arkansas operations are properly characterized essentially as interstate sales of manufactured products based upon solicitations made in Arkansas, the sales and solicitations being accompanied by incidental promotional, service, and repair activities. While Rockwell's Arkansas sales in 1959 amounted to about $500,000, nevertheless, as stated, such sales represent only ⁹⁄₁₀ths of one per cent of Rockwell's total volume, a very minor fraction.

■ Where in a diversity case there arises a problem of jurisdiction over a foreign corporation which, like Rockwell, has not qualified to do business within the State of the forum and has designated no agent for service there, two questions are presented: first, whether in the existing circumstances, the State statute upon which jurisdiction is predicated purports to confer jurisdiction over the corporation; and second, whether in the circumstances the 14th Amendment to the Constitution of the United States permits the exercise of the jurisdiction which the State statute purports to confer. The first question above outlined is one of the State law. The answer to the second question depends upon federal law, but it does not arise unless the first question is answered in the affirmative. Perkins v. Benquet Consolidated Mining Co., supra; Florio v. Powder Power Tool Corporation, 3 Cir., 248 F.2d 367; Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 212 F.2d 147; Partin v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541; Rosenthal v. Frankfort Distillers Corp., 5 Cir., 193 F.2d 137; Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193; Chandler v. G. W. Gladder Towing Co., D.C.Ark., 143 F.Supp. 568; Fritchey v. Summar, D.C.Ark., 86 F.Supp. 391.

■ As far as the federal Constitution is concerned, the right of a State to exercise in personam jurisdiction over a nonqualifying foreign corporation depends upon the existence and the extent of the corporation's activities in or contacts with that State. If a foreign corporation is not doing (or at least has not done) acts within a state, the state has no power to render an in personam judgment against it, whatever the service, unless it appears or otherwise consents to the jurisdiction. Leflar, The Law of Conflict of Laws, 1959 Edition, Section 36, p. 60. But, where the corporation has such contacts with the State of the forum that the maintenance of the suit there does not offend traditional notions of fair play and substantial justice, and where, in the circumstances, it is reasonable "in the context of our federal system" to require the corporation to defend the suit in that State, the requirements of due process are satisfied. International Shoe Co. v. State of Washington, supra [326 U.S. 310, 66 S.Ct. 158, 90 L.Ed. 95]. And, in particular cases it may be permissible to require the foreign corporation to defend even where the transactions forming the basis of plaintiff's claim are entirely extra-state. Perkins v. Benguet Consolidated Mining Co., supra.

■ Although a State may exercise jurisdiction over a foreign corporation to the fullest constitutional limits, it is not required to go so far, and it may elect not to do so. As the Court said in Fritchey v. Summar, supra (at page 395 of 86 F.Supp.): " * * * while the legislature may not go below the constitutional minimum, it may, of course, set a higher standard." Thus, the activities of a foreign corporation in a State may be sufficient, from a federal constitutional standpoint, to justify the assumption of in personam jurisdiction, but insufficient to meet higher jurisdictional requirements prescribed by the State itself.

Prior to the decision in International Shoe, supra, the rule was that a foreign corporation, in the absence of express consent, could not be subjected to State jurisdiction unless the corporation's activities within the State were such as to warrant the inference of its "presence" there or that it had by implication "consented" to be sued in the courts of that

State. Leflar, op. cit., § 36, p. 60; Minnesota Commercial Men's Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L. Ed. 573; Philadelphia & Reading Railway Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710.

It has generally been considered, however, that the rule just mentioned has been liberalized by the decisions in International Shoe and Benguet, and that those decisions have substantially extended the jurisdiction of the respective States over foreign corporations to the extent that the States may care to take advantage of the extension. Leflar, op. cit., § 37, pp. 62–64; Fritchey v. Summar, supra; see also case note in 7 Ark. Law Review, 403–405. It must be kept in mind, however, that this liberalization does not automatically or necessarily broaden narrower State concepts of what activities are requisite to justify the assertion of in personam jurisdiction. Ackerley v. Commercial Credit Co., D.C. N.J., 111 F.Supp. 92, 98. How far a State may go is not necessarily synonymous with how far a State will go. Bomze v. Nardis Sportswear, 2 Cir., 165 F.2d 33, 36.

In this connection it is not unreasonable to believe that a State, as a condition to the exercise of in personam jurisdiction with respect to a cause of action arising outside that State, may require more significant corporate activity within the State than would be required if the claim in suit had arisen as a result of corporate activity within the State. And it may be noted that the decision in Benguet does not establish that the same contacts with the State of the forum which would subject a foreign corporation to personal jurisdiction with respect to a claim or cause of action arising from those contacts would necessarily justify the exercise of in personam jurisdiction with respect to an extrastate claim or cause of action. See Leflar, op. cit. § 43.

International Shoe was decided in 1945. Arkansas decisions rendered prior to that time reflect a rather conservative view on the part of the Supreme Court of Arkansas as to the permissible scope of Arkansas jurisdiction over non-qualifying foreign corporations. Under those decisions a foreign corporation engaged entirely in interstate commerce was not deemed to be "doing business" in Arkansas so as to be subject to suit here without its consent, and mere solicitation of orders for goods to be filled by shipments from outside the State was not deemed sufficient to confer jurisdiction. See H. J. Heinz Co. v. Duke, 196 Ark. 180, 116 S.W.2d 1039, and cases there cited.

While Arkansas might well have expanded its concepts of jurisdiction on the strength of International Shoe and related cases that have been mentioned, it is not at all clear that there has been any material expansion. See in this connection the discussion in Fritchey v. Summar, supra, 86 F.Supp. at pages 391 and 396. Indeed, hesitation to rely on the International Shoe case as authority for expansion of jurisdiction is to be found in the language of the Arkansas Supreme Court in Rodgers v. Howard, 215 Ark. 43, 219 S.W.2d 240, and in Hot Springs School Dist. No. 6 v. Surface Combustion Corp., 222 Ark. 591, 261 S.W.2d 769. Cf. American Farmers Ins. Co. of Phoenix, Ariz. v. Thomason, 217 Ark. 705, 234 S.W.2d 37.

Some tendency toward expansion of jurisdiction may be indicated by the decision in Chapman Chemical Co. v. Taylor, 215 Ark. 630, 222 S.W.2d 820; and a similar tendency may be observed in Green v. Equitable Powder Mfg. Co., D. C.Ark., 99 F.Supp. 237, and Tiner v. Insulrock Corp., D.C.Ark., 120 F.Supp. 11.[5] Unfortunately for the third-party

---

3. Chapman, Green and Tiner are discussed by Dean Leflar in 9 Ark.Law Review 1, 7–8. As to Chapman it should be pointed out that although it is a later decision then Rodgers v. Howard, supra, in which International Shoe was mentioned, the Court in Chapman did not mention the International Shoe case, and placed primary reliance upon Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129,

plaintiff, however, the three cases just mentioned all involved torts occurring in Arkansas as a result of the Arkansas activities of the respective corporate defendants, which is not the case here.

■ Had the valve involved in this case been manufactured or sold in Arkansas, or had the explosion of the pipeline occurred here, the Court might be able to say, as a matter of Arkansas law, that jurisdiction with respect to Rockwell exists. But, in the circumstances here present and in view of Arkansas' apparent hesitancy to assert jurisdiction over foreign corporations to its fullest permissible extent, the Court is unwilling to say that the Supreme Court of Arkansas would hold that Ark.Stats. 1947, § 27–350 confers jurisdiction of this third-party claim asserted by one foreign corporation against another and growing out of an extrastate transaction, even though it be assumed that under the Benguet decision the assertion of such jurisdiction would be constitutionally permissible.

In reaching this conclusion the Court does not overlook Scottish Union & National Ins. Co. v. Hutchins, 188 Ark. 533, 66 S.W.2d 616; Yockey v. St. Louis-San Francisco R. Co., 183 Ark. 601, 37 S.W.2d 694; National Liberty Ins. Co. v. Trattner, 173 Ark. 480, 292 S.W. 677; and Ft. Smith Iron & Steel Mills v. Southern Round Bale Press Co., 139 Ark. 101, 213 S.W. 21. Without discussing those cases in detail, the Court observes that all of them are distinguishable on one basis or another.

Having determined that under Arkansas law the Court has no jurisdiction of the third-party claim, it is unnecessary to determine any federal constitutional question, nor is it necessary to pass upon Mr. Lundy's status as an agent for service.

It is, therefore, considered, ordered, and adjudged that the motion of the third-party defendant to dismiss the third-party complaint be, and the same hereby is, granted, and that the third-party complaint be, and the same hereby is, dismissed for want of jurisdiction.

134 F.2d 511, 146 A.L.R. 926, which antedated International Shoe by almost three years. The holding in Tiner v. Insulrock Corp., supra, was based squarely upon International Shoe and Krnach v. Electro Lift, Inc., D.C.Ohio, 13 F.R.D. 131; no Arkansas cases were cited or discussed.