## GREEN v. EQUITABLE POWDER MFG. CO.

### Civ. No. 928.

United States District Court,
W. D. Arkansas, Fort Smith Division.
Aug. 10, 1951.

11. Id. at 343–344.

238

Heartsill Ragon and Paul E. Gutensohn (of Gutensohn & Ragon), Fort Smith, Ark., for plaintiff.

Cecil R. Warner (of Warner & Warner), Fort Smith, Ark., for intervenor.

Bruce H. Shaw of Shaw & Shaw, Fort Smith, Ark., for defendants.

JOHN E. MILLER, Distirct Judge.

The original complaint against the defendant, Equitable Powder Manufacturing Company, was filed on October 12, 1950.. To this complaint the defendant filed a motion to dismiss, which motion was considered and determined in accordance with an opinion of the court filed November 30, 1950. See Green v. Equitable Powder Manufacturing Company, D.C.W.D.Ark., 94 F.Supp. 126.

Following the disposition of the motion to dismiss, the then defendant filed answer on December 6, 1950.

On December 20, 1950, the plaintiff asked leave to file an amended complaint, which leave was granted, and the amended complaint was filed. The plaintiff adopted by reference substantially all of the allegations contained in the original complaint and, in addition thereto, alleged that the offending electrical blasting cap was manufactured by the Western Cartridge Company, a divi-

sion of Olin Industries, Inc.; that the Olin Industries, Inc., is a corporation organized and existing under the laws of the State of Delaware and is not authorized to do business in the State of Arkansas; that the defendant is a subsidiary of the said Olin Industries, Inc., having the same employees, directors, officers and offices as the said Western Cartridge Company and Olin Industries, Inc.; that the three corporations are engaged in the manufacture, sale and distribution of electrical blasting caps and were organized to carry on a single common enterprise; that the Western Cartridge Company manufactures the caps while the Olin industries, Inc., directs and coordinates manufacture and sale of the caps, with the defendant, Equitable Powder Manufacturing Company, selling the caps in the State of Arkansas as well as elsewhere.

In Paragraph 4 of the amended complaint the plaintiff alleged: "The said companies are so organized and controlled and their affairs and activities so conducted as to make each the agent of the others and constitute it a mere instrumentality or adjunct in the business enterprise of manufacturing and selling electrical blasting caps, and in reality are all one and the same corporation. The said corporations are so organized as to constitute a wrong and injustice to third persons as well as this plaintiff and as to contravene public policy. As a result thereof, the corporate identity of each has been lost in regard to the plaintiff's injury, and for the purposes herein are to be considered as one and the same legal entity. The defendant, Equitable Powder Manufacturing Company, is, therefore, liable to this plaintiff for any and all injuries proximately caused by any or all of the acts of negligence and for any and all breaches of implied and expressed warranties herein alleged resulting from either the manufacture or sale of said defective cap."

To the amended complaint the then defendant filed a motion to dismiss on January 11, 1951, and the court, after considering the motion, disposed of same in the manner set forth in an opinion filed January 27, 1951. See Green v. Equitable Powder Manufacturing Company, D.C.W.D. Ark., 95 F.Supp. 127.

Following the disposition of that motion, the defendant filed an answer to the amended complaint on February 5, 1951.

On March 5, 1951, upon application of the plaintiff, leave was granted to file an amendment to his amended complaint and, on the same date, the said amendment was filed making Olin Industries, Inc., a Corporation, a party defendant.

On March 23, 1951, the defendant Olin Industries, Inc., filed a motion to dismiss the amendment to the amended complaint for lack of jurisdiction over the person of said defendant. Upon the filing of this motion, the court on March 24, 1951, entered an order reciting that, since a consideration of the motion would require the introduction of testimony equivalent to a full hearing on certain phases of the merits of the case, the consideration of the motion was deferred and postponed until a trial of the case on its merits, without prejudice to the defendant, Olin Industries. Following the entry of that order, the defendant, Olin Industries, Inc., filed its answer reserving therein its objection to the service of a summons and without waiving its motion to dismiss for lack of jurisdiction over said defendant.

Soon after this answer was filed, a conference was had with the attorneys for the plaintiff and defendant at which the order of March 24, 1951, was discussed. The attorneys for plaintiff insisted that the court consider and determine the motion of the defendant, Olin Industries, Inc., to dismiss, but no order was entered as a result of the conference and it was agreed that the attorneys for the respective parties would proceed to take depositions on the question of whether the defendant, Olin Industries, Inc., was doing or had been doing business in Arkansas so as to subject it to personal service of process. The attorneys also discussed the possibility of stipulating some of the facts in reference thereto, but no such stipulation was filed and on July 10, 1951, the plaintiff filed a response to the motion and that part of the answer which seeks to reserve the right of the determination of the motion until the case has been tried on its merits.

240

In the response the plaintiff alleged that the summons issued and the return thereon are entirely proper and that the record does not contain any matter sufficient to overcome the presumption of the truthfulness of the return of the Marshal on the summons. When this contention was made by the plaintiff, the court by letter requested the respective attorneys to appear for a conference to consider, among other things, the possibility of obtaining admissions of fact and documents to avoid the production of unnecessary evidence and, by order, a hearing on the motion of the defendant, Olin Industries, Inc., was set for August 2, 1951, but, at the request of the respective attorneys, the date for hearing was changed to August 7, 1951. The court further suggested that the respective attorneys confer immediately and that they submit to each other a list of the matters, facts and documents that they might desire to be admitted.

On July 24, 1951, the plaintiff filed a formal request for admission of facts on the question of whether the defendant, Olin Industries, Inc., was engaged in business in the State of Arkansas sufficient to make it amenable to service of summons.

On August 6, the day before the date for hearing on the motion, the defendant filed a response to the plaintiff's request for admissions of fact in which it stated that it was unable at that time to respond to all of the plaintiff's requests but that it would be in a position to respond after a hearing before the court and after the court had passed on the relevancy of the factual material requested by plaintiff.

All parties appeared by their respective attorneys on the date set for the hearing, August 7, 1951, and a verbal response to the request for admissions of fact was made by Mr. Russell R. Casteel, Secretary of Olin Industries, Inc. The response was taken by the Court Reporter and, at the conclusion thereof, it was agreed by all parties that such response should be considered as a compliance with the terms of Rule 36, Federal Rules of Civil Procedure, 28 U.S.C.A.

Thereupon, the motion to dismiss was submitted upon the record as thus made, together with the depositions of Ernest and Dorothy Lind and the exhibits thereto taken by plaintiff on June 25, 1951.

It will be seen from the brief recital of the above facts that the plaintiff has encountered considerable difficulty in alleging a cause of action to which the defendant could be required to answer. It is not necessary to elaborate further on the proceedings because any one interested may consult the prior opinions of the court hereinbefore cited. However, the Judge of this Court entertains the hope that the case may be brought to issue and tried upon its merits before he reaches the age of retirement or before his mental and physical strength is entirely exhausted by a consideration of the various amendments and motions filed by the able, industrious, young and vigorous attorneys for the respective parties.

Service of summons issued on the amendment to the amended complaint was served on the defendant, Olin Industries, Inc., in the manner provided by Act 347 of the Acts of Arkansas for the year 1947, Section 27-340, Arkansas Statutes 1947, and the provisions of Rule 4(d)(7), Federal Rules of Civil Procedure, and was also served upon "Omar G. Nichols at his residence, 1609 Cumberland, as Arkansas agent and employee of the defendant, Olin Industries, Inc.". Proof has been made and appears in the record that the service of the summons was in strict accordance with the provisions of said Act 347, supra, but the sufficiency of the service is challenged by the defendant on the ground, "That the defendant is a foreign corporation organized under the laws of the State of Illinois and is not subject to service of process within the Western District of Arkansas." The plaintiff invokes the jurisdiction of the court solely on diversity grounds. Rule 4 (d) (7), supra, provides that service of process on a foreign corporation is valid if made in the manner prescribed by any statute of the United States or in the manner prescribed by law of the state in which the service is made. There is no Federal statute applicable and, service having been attempted under the Arkansas procedure, the validity of the service is to be determined by the requirements for service in this state. The first is a question of state

law, has the state provided for bringing the foreign corporation into its courts under the circumstances existing in the case presented? There is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state. If the state, by statute or otherwise, has purported to exercise jurisdiction over the foreign corporation, then the question may arise whether such procedure violates the due process clause or the interstate commerce clause of the Federal Constitution. United States Constitution, Article I, Section 8, Clause 3, and Amendment 14. The latter question is a Federal one and the state authorities are not controlling, but that question is not reached for decision until it is determined that the state statute is broad enough to assert jurisdiction over the defendant in a particular case. Pulson v. American Rolling Mill Company, 1 Cir., 170 F.2d 193.

Therefore, it is necessary for the court to first determine the extent and the provisions of the state statute and whether the facts in the case come within the provisions of the state statute.

The statute relied upon by plaintiff to sustain the validity of the service provides: " * * * any corporation not qualified under the Constitution, and Laws of this State as to doing business herein, who (that) shall do any business or perform any character of work or service in this State shall, by the doing of such business or the performing of such work, or service, be deemed to have appointed the Secretary of State, or his successor or successors in office, to be the true and lawful attorney or agent of such non-resident, upon whom process may be served in any action accrued or accruing from the doing of such business, or the performing of such work, or service, or as an incident thereto by any such non-resident, or his, its or their agent, servant or employee."

As heretofore stated, the mechanical and technical requirements of service have been met by plaintiff, and the statute further provides that service of summons, when obtained upon any such non-resident in the manner provided, shall be deemed suffi-

cient service of summons and process to give any of the courts of the state jurisdiction over the cause of action and over such non-resident defendant and so warrant and authorize personal judgment against such non-resident defendant, if the plaintiff prevails in the action.

In Gillioz v. Kincannon, Judge, 213 Ark. 1010, 214 S.W.2d 212, the validity of the statute was upheld except as to the retroactive feature or provision. In Chapman Chemical Company v. Taylor, 215 Ark. 630, 222 S.W.2d 820, the court considered the sufficiency of the service on the appellant, Chapman Chemical Company. The Chemical Company insisted that it had done no business in the state sufficient to bring it within the provisions of the act. There were three separate corporations, each doing business as the Chapman Chemical Company. One was located in the State of Louisiana, another in the State of Illinois and the third in the State of Tennessee. The Tennessee corporation was engaged in manufacturing chemicals solely for sale by the Illinois corporation and the Louisiana corporation. All the stock in the three corporations was owned by Dale Chapman except certain qualifying shares. The Illinois corporation was the only one that was sued. It had no office or warehouse in the state, no bank account and no agent in the state. Orders for the products of the Tennessee corporation were received in Illinois and filled from that state from the Tennessee office by shipments in interstate commerce at the direction of the defendant Illinois corporation. It had the exclusive power to receive and fill and accept the orders. There was no attempt to show that the defendant corporation was doing business in the sense that it would be subject to penalties for failure to secure authorization from the state for admittance to the state.

The defendant, the Illinois corporation, had for several years sold throughout the state certain wood preservatives. Such sales comprised a substantial part of the corporation's business and its traveling salesmen had for many years solicited and procured orders in the state for such wood preservatives. Its principal customers

were operators of lumber mills and wholesale lumber dealers who acted as distributors for the wood preservatives. Its representatives consulted and advised with the agricultural and forestry agents of the state as to the manner in which the product should be used and as to additional uses thereof which might be made and otherwise did what they could to build up good will in the state, valuable to the business of the defendant corporation. It desired to extend its sales and sought to introduce a chemical referred to as 2-4-D for use in the rice growing area of the state. Its representatives conferred with officers of the Rice Growing Association as to the use of the chemical. It was agreed that a test should be made and one was made in the state to determine whether the chemical dust could be distributed from an airplane. The purpose of the test was to demonstrate that the chemical dust could be distributed by the use of airplanes. Mr. Chapman came to Arkansas in his automobile and brought with him a quantity of the chemical for the purpose of making a test. He had cooperated with state agricultural experiment stations and provided literature containing instructions for the use of the chemical as a guide to prospective users of the chemical. Advertisements were carried in the local papers, the cost of which was divided between the Chemical Company and the local distributors.

The court quoted with approval from the case of Frene v. Louisville Cement Company, 77 U.S.App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926, as follows: "Consequently it is (not) clear that if, in addition to a regular course of solicitation, other business activities are carried on, such as maintaining a warehouse, making deliveries, etc., the corporation is 'present' for jurisdictional purposes. And very little more than 'mere solicitation' is required to bring about this result." [215 Ark. 630, 222 S.W.2d 823.]

The Court then said: "The facts herein recited constitute something more than the creation of good will or solicitation of business, and while it was shown that none of the Chapman products were stored for delivery in this State, it was shown that a portion thereof was actually brought into and delivered in this State by the company's authorized representatives, in fact, its President, himself, and this was done for the purpose of making the test which was made in this State which induced the sale of the very product, the use of which, for the purpose intended, resulted in the damage for the compensation of which this suit was brought."

The court concluded that the trial court did not err in holding that the Act applied and in refusing to quash the service of summons had under the Act.

The next case in which the question was considered by the Supreme Court of Arkansas is American Farmers Insurance Co. of Phoenix, Arizona v. Thomason, Guardian, 217 Ark. 705, 234 S.W.2d 37, 38.

In that case the defendant was an Arizona insurance corporation. The insurance policy sued on was entered into in California in 1944 while the insured, a resident of Arkansas, was temporarily employed in California, and the insured while still in California suffered an injury which was within the coverage of the policy. There was no evidence whatever that the defendant company was doing business in Arkansas at the time the policy was executed and delivered in California. The court said: "Apart from that, the due process clause of the Federal Constitution would be violated if substituted service such as plaintiff contends for were permitted. A similar problem was presented in Old Wayne Mutual Life Ass'n v. McDonough, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345. It was there held that, a foreign insurance corporation doing business in Pennsylvania without authority having been sued there by a local resident on an insurance policy executed outside the state, substituted service was wholly invalid even though a Pennsylvania statute providing for it had been complied with. In the absence of actual or implied consent to substituted service, such service on the foreign corporation was held to be limited to causes of action arising out of the business carried on or other acts done by the corporation in the state where suit was brought. See also Simon v. Southern Ry. Co., 236 U.S. 115, 35 S.Ct. 255, 59 L.Ed. 492; National Liberty Ins. Co. v. Trattner,

173 Ark. 480, 292 S.W. 677; Protas v. Modern Investment Corp., 198 Ark. 300, 128 S.W.2d 360. It is suggested that the requirements of due process of law for substituted service, as interpreted by the United States Supreme Court, have been modified since the decision in Old Wayne Mutual Life Ass'n v. McDonough, supra. There is no doubt that they have at least been clarified. In International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 157, 90 L.Ed. 95, it was held that a course of activity consisting merely of the solicitation of business by salesmen, which was admittedly less than the 'doing business', in Washington enabled that state to subject the foreign corporation to personal jurisdiction based on constructive service. In Travelers Health Ass'n v. Com. of Virginia [ex rel. State Corp. Comm.], 339 U.S. 643, 70 S.Ct. 927 [94 L.Ed. 1154, decided June 5, 1950], the theory of the International Shoe Co. case was extended to permit the State of Virginia to exercise jurisdiction over a Nebraska insurance company which was engaged in extensive mail order solicitation of insurance business in Virginia. The major difference between the Virginia case and the case now before us is that in the Virginia case it was shown by evidence that the Nebraska company had for many years been soliciting 'memberships' in Virginia by mail, that it had about 800 Virginia policyholders, and had been investigating claims in Virginia and otherwise servicing policies there. The cause of action sued upon arose out of the Nebraska company's activities conducted in Virginia. The case now before us, in contrast, involves action on a policy issued in California by a company which, as far as we can discover from the evidence, had never solicited business, by mail or otherwise, nor done any other acts in Arkansas at the time this cause of action arose. The effort thus to impose local jurisdiction upon a non-appearing, non-consenting foreign corporation which has engaged in no activity in Arkansas, in a suit on a cause of action which arose outside the state, cannot be successful."

The facts in the instant case as developed by the response of the defendant to the request for admissions filed by plaintiff, and the depositions and their exhibits taken by plaintiff, are as follows:

The defendant is a corporation organized and existing under the laws of the State of Illinois, with its principal office and place of business in East Alton, Illinois. It is engaged in the manufacture and sale of various products among which are various kinds of guns, shells of various kinds, blasting caps, electrical detonators, flashlight batteries, radiators and heaters for automobiles and airplanes and various brass products. Its business is separated into divisions. Such divisions are not separate corporations, although designated by a separate name. Among the named divisions are the Winchester Repeating Arms Company division of New Haven, Connecticut, and the Western Cartridge Company division of East Alton, Illinois. The corporation has plants and properties at East Alton, Illinois, and other places. It manufactures, through the Western Cartridge Company division, electrical blasting caps of the kind which plaintiff alleges caused his injury.

The Equitable Powder Manufacturing Company is a corporation and an affiliate of the defendant, Olin Industries, Inc., and fifty-one per cent of the capital stock of said Powder Company is owned by the said Olin Industries, Inc.

John M. Olin is President, Spencer T. Olin, First Vice President, and Russell R. Casteel, Secretary of the defendant, Olin Industries, Inc., and hold the same offices in the defendant, Equitable Powder Manufacturing Company, except the designation of Spencer T. Olin in the latter is that of Vice President instead of First Vice President.

The defendant, Equitable Powder Manufacturing Company, maintains its principal office in the office of the defendant, Olin Industries, Inc., at East Alton, Illinois. The amount of sales of the various products of the defendant, Olin Industries, Inc., and its divisions for use in Arkansas is substantial.

The defendant has regularly employed sales representatives who are actively employed in the State of Arkansas and who call on various distributors of the Olin Industries, Inc., products, but who take

no orders from the distributors for such products. Their chief business seems to be the promotion of sales by creating good will and confidence of the public in the value and worth of the products of the defendant manufactured by it through its various divisions. These representatives are now and have been in the past particularly effective in the promotion of the sales of the products of the Western Cartridge Company division and the Winchester Repeating Arms Company division.

Omar G. Nichols, one of the persons upon whom the summons was served, had been an employee in Arkansas of the Olin Industries, Inc., but was not such an employee at the time the summons was served on him.

W. H. Reedy is the Division Sales Manager of the defendant and has his offices in Memphis, Tennessee. His district covers and includes Arkansas, and he often makes trips to this state and calls upon persons and firms in an effort to promote the business of the defendant in the state. Other representatives do likewise, but the bulk of their promotional work seems to be confined to the guns and ammunition business. Some of the employees of the defendant put on demonstrations of the power and velocity of the firearms and ammunition and for that purpose travel to various destinations in the state.

The employees of the defendant, other than the shooting experts, call on all the distributors of the defendant's products in their promotional work but, from the hazardous nature of explosives such as dynamite and blasting caps, the number of distributors is limited because it is necessary for a distributor to have special facilities for the handling of such products. Nevertheless, there are certain distributors in Arkansas such as mine operators and others engaged in such business as to require the use of blasting materials. At the time this suit was filed, the defendant, Equitable Powder Manufacturing Company, was maintaining and had maintained for several years such a facility in the Fort Smith Division of the Western District of Arkansas.

The Steve Hannagan Agency, a nationally known advertising concern, handles the publicity releases and advertising for the defendant in Arkansas and particularly stresses the virtues of the guns and ammunition. The expert marksmen pay very little attention to the promotion of anything other than the guns and ammunition, but do succeed in obtaining a considerable amount of publicity through the newspapers because of their remarkable skill in the use of such guns and ammunition as are manufactured and sold by the defendant, Olin Industries, Inc., through its divisions. Their salary and expenses are paid through the Western Cartridge Company division except at times when they are loaned by the defendant, Olin Industries, Inc., to the United States Army for the purpose of making demonstrations.

The defendant, Olin Industries, Inc., has been interested for some time in the maintenance and operation of a recreational facility in the vicinity of Stuttgart, Arkansas. It has obtained a lease on several hundred acres of land in that area and expended a considerable sum of money, approximately $50,000, in providing a place for the shooting of migratory game birds. The cost of the operation of the project is deducted on the Federal income tax returns of Olin Industries, Inc., as an operating expense, and is usually so operated that, during the duck season, present and prospective customers and personal friends of the various divisions are entertained under the supervision of the particular division. Roughly, those divisions for entertainment are classified as the Explosive Division, the Brass Division, the Firearms and Ammunition Division, etc. No sales are attempted to be made during the visit of such persons as guests of the defendant, Olin Industries, Inc., but the guests are given every consideration and attention to insure each of them a successful hunt and acceptable entertainment. Apparently, no expense is spared to accomplish this objective and to promote good will for the defendant, Olin Industries, Inc., and its various divisions.

The defendant earnestly contends that it has not and is not now engaged in business in Arkansas and that, even though the court

should hold that its past and present operations in Arkansas constitute the doing of business, yet the alleged injury to the plaintiff did not accrue from the doing of such business or the performing of such work or service or as an incident to the activity of the defendant, its agents, servants and employees. This contention raises the real and substantial question for the determination by the court.

It should be borne in mind that the Supreme Court of Arkansas in the cases of Chapman Chemical Company v. Taylor, and American Farmers Insurance Company of Phoenix, Arizona v. Thomason, Guardian, supra, were confronted with facts differing from the facts in the instant case. In the Thomason, Guardian, case, the alleged cause of action did not accrue in Arkansas and, at the time the policy of insurance was issued, the defendant was not engaged in any kind of business or activity in Arkansas, and the decision of the court was greatly dictated by that fact. However, the court, in discussing the decision of the United States Supreme Court in Old Wayne Mutual Life Ass'n v. McDonough, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345, said: "In the absence of actual or implied consent to substituted service, such service on a foreign corporation was held to be limited to causes of action arising out of the business carried on or other acts done by the corporation in the state where suit was brought." [217 Ark. 705, 234 S.W.2d 38.]

The court, in the Chemical Company case, supra, was impressed with the fact that, although casual or occasional or regular, continuous and long continued solicitation of business with the orders being filled in another state and shipped in interstate commerce would not constitute doing business, yet the facts then under consideration constituted "something more than the creation of good will or solicitation of business". [215 Ark. 630, 222 S.W.2d 823.]

In a footnote in the Thomason, Guardian, case, supra, appearing on page 708 of 217 Ark., on page 39 of 234 S.W.2d of the opinion, the court, speaking through Judge Robert A. Leflar, who is also Dean of the Law Department of the Arkansas University, said: "A statute providing for service in Arkansas on this theory was thereafter enacted, in Act 347 of 1947, Ark. Stats., § 27–340. See 3 Ark.L.Rev. 22–24. There are many cases, both in Arkansas and elsewhere, holding that a state may base jurisdiction upon the doing of the act (less than 'doing business') out of which arises the cause of action sued upon. See Highway Steel & Mfg. Co. v. Kincannon, J., 198 Ark. 134, 127 S.W.2d 816; Chapman Chemical Co. v. Taylor, 215 Ark. 630, 222 S.W.2d 820; Johns v. Bay State Abrasive Products Co., D.C.Md., 89 F.Supp. 654."

■ There is no dispute and the defendant frankly admits that, through the operation of the project at and near Stuttgart, Arkansas, it sought to promote the sales of its products to various consumers and distributors whether living in Arkansas or elsewhere. The operation of the project no doubt did increase to a considerable extent the good will towards the defendant and its products and, while the traveling representatives of the defendant did not in fact consummate any sales in Arkansas, their work must have profoundly affected the extent of the use of the products of the defendant and its various divisions in the State of Arkansas. Under these facts, it cannot be said that the sale of the alleged offending blasting cap allegedly manufactured by the division of the Western Cartridge Company of the defendant, Olin Industries, Inc., and its use by the plaintiff was not an incident to the activity and service of the defendant, its agents, servants and employees.

This construction of the statute brings the court to a consideration of whether it infringes or is violative of the constitutional rights of the defendant to due process.

■ In the case of International Shoe Company v. State of Washington, 326 U.S. 310, 311–316, 66 S.Ct. 154, 158, the court said: "* * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'"

The court, in considering the meaning of the terms "present" or "presence," held that they were used merely to symbolize the activities of the corporation's agent within the state which the courts will deem to be sufficient to satisfy the demands of due process and, "Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection."

The presence in a state of a corporation in the regular sense in which that term is used has never been doubted when the activities of the corporation in the state have been not only continuous and systematic but also give rise to the liability sued on. Likewise it has been generally recognized that casual presence of the corporation agent or his conduct of single or isolated items of activities in behalf of the corporation are not enough to subject the corporation to a suit on causes of action unconnected with the activities in the state.

In the instant case, the activities of the defendant, Olin Industries, Inc., have not been merely casual or isolated. They have been systematic and carried on with one end in view, the promotion and increase of the sales of its products to consumers in Arkansas and, while the sale of certain products may have been stressed more than others, yet all of the activities were conducted with one purpose in view. The Olin Industries, Inc., needs no advice from any court on how to successfully operate a business. Their business acumen has dictated their policy and their contacts in the State of Arkansas, and such contacts and conduct must have been profitable else they would have been abandoned and not continued. If it was not too inconvenient for the defendant to create and maintain these contacts in the state, it would seem logical that it would not be extraordinarily inconvenient for it to be required to defend the plaintiff's alleged cause of action since the use of its product allegedly produced the injury.

In further testing the extent to which a state may go in the enactment of legislation governing the service of process on a foreign corporation, the court should bear in mind the following statement in the opinion in the International Shoe Company case, supra, 326 U.S. at page 319, 66 S.Ct. at page 159:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. St. Louis S. W. R. Co. v. Alexander, supra, 227 U.S. [218] 228, 33 S.Ct. [245] 248, 57 L.Ed. 486; International Harvester Co. v. Kentucky, supra, 234 U.S. [579] 587, 34 S.Ct. [944] 946, 58 L.Ed. 1479. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. Pennoyer v. Neff, supra [95 U.S. 714, 24 L.Ed. 565]; Minnesota Commercial Men's Ass'n v. Benn, 261 U.S. 140, 43 S.Ct. 293, 67 L.Ed. 573.

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

Compare International Harvester Co. v. Kentucky, supra, with Green v. Chicago, B. & Q. R. Co., supra [205 U.S. 530, 27 S. Ct. 595, 51 L.Ed. 916], and People's Tobacco Co. v. American Tobacco Co., supra [246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587]. Compare Connecticut Mutual Life Ins. Co. v. Spratley, supra, 172 U.S. [602] 619, 620, 19 S.Ct. [308] 314, 315, 43 L.Ed. 569, and Commercial Mutual Accident Co. v. Davis, supra [213 U.S. 245, 29 S.Ct. 445, 53 L.Ed. 782], with Old Wayne Life Ass'n v. McDonough, supra. See 29 Columbia Law Review, 187–195."

It follows from an application of the Statutes of Arkansas and the law as declared by the United States Supreme Court that the service of process issued on the amendment to the amended complaint on the defendant, Olin Industries, Inc., is valid, and the motion to quash should be overruled.