RODGERS *v.* HOWARD, JUDGE.

4-8592                                        219 S. W. 2d 240

Opinion delivered April 4, 1949.

*W. C. Rodgers,* for petitioner.

*Per Curiam.* This is an original proceeding in this Court, and embraces three separate motions filed by the same party, each seeking a writ of *procedendo ad judicium.*

The petitioner here is the plaintiff in an action pending in the Circuit Court of Howard county against the Campbell Soup Company. The respondent is the Judge of the Ninth Judicial Circuit, which includes Howard county; and the prayer of each motion is that this Court require the respondent to adjudicate petitioner's case in the Circuit Court. We forego any discussion of (1) the history and original functions of the writ of *procedendo ad judicium,* and (2) whether the writ under our present Code practice should be styled under another name; because this Court, under our Constitution (Art. VII, § 4) has supervision over all inferior courts, and we consider that by whatever name the petition here is styled, consideration of the relief sought by the petitioner is within our constitutional power.

On November 7, 1947, petitioner filed his complaint in the Howard Circuit Court against the Campbell Soup Company alleging it to be a corporation organized under the Laws of New Jersey, and domiciled in that State.

The complaint sought judgment *in personam* against the defendant.

I. *First Attempted Service.* Service on the defendant was attempted under § 1374, Pope's Digest—*i.e.,* by serving summons on the corporation officers at its home office in New Jersey. When the Circuit Court (under the authority of § 8226, Pope's Digest) held such service insufficient to support a judgment *in personam,* the petitioner filed in this Court on March 29, 1948, his first motion for writ of *procedendo ad judicium.* We denied that motion by a *per curiam* order of April 12, 1948.

II. *Second Attempted Service.* Petitioner then had a summons against the Campbell Soup Company served on the Secretary of State of Arkansas,[1] based on the premise that, under Act 347 of 1947, the Campbell Company was capable of being sued in actions *in personam* in this State. Unless said Act 347 of 1947 is applicable, then this service must also fail. The Circuit Court held this service to be insufficient, and petitioner then filed in this Court—on June 26, 1948—his second motion for writ of *procedendo ad judicium.* Attached to that motion there is what purports to be the evidence heard in the Circuit Court, and on which the Court held the service to be deficient.

Assuming, but not deciding, that this evidence is properly before us, and that this is the appropriate method for presenting the issue, the transcript reflects that a traveling salesman of the Campbell Soup Company solicited orders from the Stuart Grocery Company in Nashville, Arkansas; that such orders were forwarded by the salesman to the home office of the Campbell Soup Company in New Jersey for acceptance or rejection; that sometimes the Stuart Grocery Company sent its orders direct by mail to the Campbell Soup Company in New Jersey; that upon acceptance of any order by the Campbell Company at its home office in New Jersey (whether the order was obtained by the salesman or sent direct by mail as aforesaid), the shipment from the

---

[1] Summons was also served on the State Auditor under § 2250, Pope's Digest.

Campbell Soup Company to the Stuart Grocery Company was packed, marked, and duly identified as for that party, and placed in a railroad *carload* shipment containing goods for distribution to other purchasers in the Nashville freight territory; that the entire carload moved by rail from New Jersey to the Hunter Transfer Company at Texarkana, Arkansas; that this last-mentioned concern opened the car and then sent to the Stuart Grocery Company its shipment and likewise sent other purchasers their shipments from the said railroad car. In short, the Hunter Transfer Company broke the shipment to less-than-carload lots—all of which was evidently a freight saving device. Stuart Grocery Company paid direct to Campbell Soup Company in New Jersey.

Because of the activities of the Hunter Transfer Company in Texarkana, Arkansas, petitioner claims that the Campbell Soup Company was doing business in Arkansas, and therefore capable of being brought into the Arkansas courts by service of process on the Secretary of State under Act 347 of 1947, or service on the State Auditor under § 2250, Pope's Digest. The cases of *Crawford* v. *Louisville Silo & Tank Co.,* 166 Ark. 88, 265 S. W. 355 and *Citizens Union National Bank* v. *Thweatt,* 166 Ark. 269, 265 S. W. 955 are authority for our holding against petitioner's contention. In those cited cases, just as here, a non-domesticated foreign corporation accumulated several shipments into one carload shipment to an Arkansas point, where an agent of such corporation distributed the individual shipments to the various purchasers; and we held that such shipments were inter-state commerce and did not constitute "doing business" in Arkansas by the foreign corporation within the purview of our statutes.

Act 347 of 1947 was before this Court in the recent case of *Gillioz* v. *Kincannon,* 213 Ark. 1010, 214 S. W. 2d 212, and reference is made to that opinion for a discussion of the said Act. Petitioner claims that Act 347 of 1947 changed the rules of law announced in the Crawford-Louisville and Citizens Bank-Thweatt cases, *supra,* and petitioner urges that the said Act allows the Campbell Company to be sued in a case such as this one, since (1)

Hunter Transfer Company was the agent of the Campbell Company to break and subdivide the carload shipment, and (2) such act by the Hunter Transfer Company was done and performed in the State of Arkansas.

This contention seeks to pose the difficult question as to the applicability of the rule announced by the U. S. Supreme Court in such cases as *International Shoe Co.* v. *Washington,* 326 U. S. 310, 90 L. Ed., 95, 66 S. Ct. 158, 161 A. L. R. 1057; *Kentucky Whip & Collar Co.* v. *Illinois C. R. Co.,* 299 U. S. 334, 81 L. Ed. 270, 57 S. Ct. 277; and *Standard Dredging Co.* v. *Murphy,* 319 U. S. 306, 87 L. Ed. 1416, 63 S. Ct. 1067. These cases hold (in the language of International Shoe Co. v. Washington, *supra*):

" . . . that Congress, in the exercise of the commerce power, may authorize the States, in specified ways, to regulate interstate commerce or impose burdens upon it."

The question now becomes, whether a holding by us would be within the rule of such cases, if we should hold that the acts performed by the Hunter Transfer Company for the Campbell Company—even though in interstate commerce—were sufficient to support substituted service in actions *in personam* in the Arkansas courts. We pass this question as one of unnecessary speculation. Whether the Legislature could validly enact such legislation is not for us to decide at this time. We hold that Act 347 of 1947 was not intended to change the rule concerning the breaking of the journey of interstate shipments as announced in the cases of Crawford v. Louisville Silo & Tank Co. and Citizens Bank v. Thweatt, *supra.* Until such a change of the rule in these cases be attempted by the Legislature, we need not speculate on its constitutionality.

Also, without attempting now to delineate the permissible limits to which a State may go in using substituted service as the basis to support a judgment *in personam,* it is sufficient in this opinion to say—and we so hold—that the shipment of the Campbell Company in the case at bar preserved its interstate character until the shipment reached the Stuart Grocery Company in

Nashville, Arkansas, and that the acts of the Hunter Transfer Company, even if it should be said to be an agent of the Campbell Company, were transactions in interstate commerce, and not within the scope or contemplation of Act 347 of 1947. In short, we hold the Crawford-Louisville Silo and Citizens Bank-Thweatt cases to be ruling in the case at bar; and therefore we deny the petitioner's motion filed in this Court on June 26, 1948.

III. *Third Attempted Service*. While there was still pending before this Court the motion involving the second attempted service, the plaintiff in the Circuit Court made further attempts to obtain service on the Campbell Soup Company. He pursued the provisions of § 532, *et seq.*, Pope's Digest, *i. e.*: the plaintiff made affidavit that the defendant was a non-resident; a bond was filed; a writ of attachment was issued; warning order was published; and an attorney *ad litem* was appointed, who duly reported. On the writ of attachment the sheriff made a return that no property of the Campbell Soup Company was found on which to levy the attachment; and, based on such return, the Circuit Court refused to render judgment for plaintiff. Thereupon the petitioner filed in this Court—on February 1, 1949—his third motion for writ of *procedendum ad judicium*. In 7 C. J. S. 388, and in 6 C. J. 213, the recognized holdings are summarized in this language:

"In an attachment suit, where there is no personal service on defendant, a levy or its equivalent is essential to give the court jurisdiction to proceed to judgment, . . ."

Based on the holdings as summarized by the quoted statement, the Circuit Court correctly refused to render judgment for the plaintiff in the attachment proceeding, since there was no property seized upon which to base the attachment.

*Conclusion*: Each of the motions for writ of *procedendum ad judicium* is denied; and, since we are denying the motions, we reserve the question, whether the petitioner's correct course was to file such motions here, or to appeal from a final order of dismissal.