**TINER et al.**

**v.**

**INSULROCK CORP. et al.**

**No. 2678.**

United States District Court,
E. D. Arkansas, W. D.

April 5, 1954.

W. A. Eldredge, Jr., Mehaffy, Smith & Williams, Little Rock, Ark., for plaintiffs.

Wood & Smith, Little Rock, Ark., for defendants.

TRIMBLE, Chief Judge.

The only question before the court at this time arises from the special appearance and motion to dismiss by the defendants Insulrock Corporation and Smith & Kanzler Corporation, New Jersey corporations, the basis of which is the allegation that the service of summons on these defendants is invalid because of the lack of "presence".

The return of service on one writ shows that service was attempted to be had on Insulrock Corporation and Smith & Kanzler Corporation by service for each of them on Warren H. Buchanan, doing business as Acoustics & Specialities Company, as agent for the two corporations, service being secured by delivering a copy of the writ to Charles D. Foley at his office at 317 East Markham Street, Little Rock, Arkansas. Another writ was served, and the return of service shows that it was had on Insulrock Corporation and Smith & Kanzler Corporation by delivery of the writ and copy of the complaint personally to C. G. Hall, Secretary of State.

The return on the first writ indicates that there was an effort to serve the agent of Insulrock Corporation and Smith & Kanzler Corporation by securing service on Warren H. Buchanan, doing business as Acoustics & Specialities Company, by delivering a copy of the writ, together with a copy of the complaint to Charles D. Foley, local manager for Acoustics & Specialities Company. It is evident that this would be ineffective service upon these corporations unless it is shown that Charles D. Foley was in fact the agent of the corporations, in which event the return of the writ might be amended, if the facts are sufficient to warrant such amendment. No motion to amend the return is before the court.

Under the present condition of the return on service of the writ, I am of the opinion that these corporations are not brought into this court by service of the writ on Charles D. Foley, and further inquiry as to the direct service upon the corporations is not necessary at this time.

As stated, the writs and copies of the complaint were also served on C. G. Hall, Secretary of State. This was in accordance with the provisions of Section 27–340, Ark.Stat.1947, Act 347 of the Acts of 1947. The question before the court at this time then is whether or not the substituted service on the Secretary of State is sufficient to bring these corporations into court.

I am indebted to counsel for their commendable diligence in presenting to the court excellent briefs and a fairly full account of the pertinent facts.

The facts before the court are upon the affidavit of Mr. Leonard Diener, an

officer of the Insulrock Corporation, and the deposition of Mr. Charles Donald Foley.

It appears from the affidavit of Mr. Diener that Insulrock Corporation manufactures and distributes the products involved in this litigation; that it sells its products directly to distributors, and that the distributor for this area, including Louisiana, Mississippi, Arkansas, and the southwestern portion of Tennessee was Acoustics & Specialities Company whose main office is in New Orleans, with a branch office in Little Rock, Arkansas. In the letter from Smith & Kanzler Corporation (Smith & Kanzler is the sales manager of Insulrock Corporation) to Acoustics & Specialities Company inquiry was made as to the names and addresses of branch offices so that necessary samples and literature could be sent to them. All orders for material were to be sent directly from Acoustics & Specialities Company to Insulrock Corporation, and bills for merchandise ordered were sent to and paid by Acoustics and Specialities Company from its New Orleans office, and it is clear that the arrangement between Acoustics and Insulrock was to effect the sales and deliveries of material throughout the sales territory allocated to Acoustics.

Acoustics & Specialities Company is the business name of Warren H. Buchanan, an individual, and Witness Foley became his representative in July, 1950. It appears from the deposition given by Mr. Foley that in effect he, himself, was "Acoustics & Specialities Company" in the State of Arkansas for all practical purposes. Throughout his deposition he referred to the operations by using the editorial *we*, as for example, "We quote the general contractors", "We pay Insulrock within the discount period", "We handle that product and bill and carry the accounts", and then he stated that he had full power to contract for and in behalf of Warren H. Buchanan, doing business as Acoustics & Specialities Company. In answer to a question by Mr. Lindsey, attorney for Buchanan, this witness stated that he gave the architect the same information and representations that had been given to him by Insulrock.

This witness in describing the mechanics of purchase agreements stated that "We got a copy of the original order on which we based our justification for ordering the material for the job". This was mailed to the New Orleans office, and the New Orleans office placed the order with Insulrock, but the witness further said, "We deviate from that in some cases * * *. We might either call by long distance or telegraph Insulrock placing an order with them".

The witness goes on to explain the operations involving the 555 job in Little Rock in which six or seven carloads of material were delivered.

This witness also testified that he was furnished by Insulrock Corporation certain samples and pictures and literature with respect to the product. These he studied and passed on to architects and contractors. He represented to the contractors on the 555 job that the material would fit specifications, and he turned over a number of pictures to them. Witness also says that he sent out sales letters to various contractors in the state.

Plaintiffs contend when all of these operations are considered they amount to the transaction of business in the State of Arkansas by Insulrock and its sales representative, Smith & Kanzler. It is shown that when some of the material furnished by Insulrock proved defective, two of the officers came to Arkansas to make an investigation of the material and to make an adjustment with the contractors.

It is undisputed that when the injuries involved in this litigation occurred, Insulrock was notified and that it sent one of its officers, a Mr. Lieff, to Arkansas to inspect material both in Little Rock and Pine Bluff. Then, a Mr. Gottfried followed the visit of Lieff and he stayed for several days.

Gottfried was sent to inspect the material that had been shipped and to segregate it into usable material for decking

purposes and material to be rejected. Lieff had only made a physical inspection of what material was on hand at the jobs in Little Rock and Pine Bluff. Gottfried was an inspector in the plant in Linden, New Jersey. There was a considerable amount of material on the job for him to inspect and select for use in roof decking. The witness, Foley, took Gottfried out to the job and introduced him to the superintendent and others on the 555 job, and then took him down to Pine Bluff to inspect other material shipped there by Insulrock.

The witness further testified that after the whole thing had settled down, Leonard Diener, Executive Vice President of the Insulrock corporation, came to assist in negotiations with the contractor. Gottfried was present at these negotiations and so was Witness Foley. The total bill for Insulrock's material amounted to approximately $23,000 and the contractor was given credit for $7,500 on account of defective material. The $7,500 was deducted from the amount due, and the contractor paid the balance.

■ I believe that under the undisputed evidence in this case the Insulrock Corporation and the Smith & Kanzler Corporation did transact business in the State of Arkansas such as would come within the intent of the language of Act 347 of 1947; in other words, that the operations of these defendants fall under the provision that a corporation shall be deemed to have appointed the Secretary of State as Agent when it "shall do any business or perform any character of work or service in this State". I think this conclusion is supported by the following cases: International Shoe Company v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Green v. Equitable Powder Manufacturing Co., D.C.1951, 99 F.Supp. 237; Krnach v. Electro Lift, Inc., D.C.1952, 13 F.R.D. 131, 133.

I have taken into consideration the question of whether the requirement that these corporations defend this suit is a violation of what some of the courts refer to as the notion of fair play, and whether it violated the principle permitting State Courts to enforce obligations which would be less convenient than if enforced in the home state of the corporation. In this connection I have not overlooked the decisions of the courts holding that it would not be reasonable to subject a foreign corporation to the jurisdiction of State Courts, though technically found to fall within the provisions of the state statutes, if the contacts of that corporation in the foreign state were so inconsiderable as to result in violation of the due process clause of the federal constitution.

While the evidence in the case may not be sufficient to constitute Foley an agent of Insulrock, it is undisputed that through contacts with Foley, and through the activities of Foley, Insulrock and Smith & Kanzler promoted the interests of Insulrock which resulted in no small accomplishments.

Insulrock sent its literature, which described to great advantage the material which it manufactured, directly to Foley. Whether Insulrock instructed him to distribute this literature and to carry on a campaign for the sale of its products is immaterial, because it was necessarily implied that that was the purpose of supplying Foley with this advertising literature. Foley took orders in the name of Acoustics & Specialities Company, which were sent from the New Orleans office to the manufacturing company in Linden, New Jersey, and the orders were filled by direct F. O. B. shipments to the purchasers. At times he also telephoned orders to Insulrock.

Insulrock conducted schools for its salesmen, one of which was held in Atlanta and was attended by Foley. It is not denied that Foley attended this meeting and received instructions there for carrying on the campaigns for the sale of Insulrock material.

Perhaps the best method of determining whether or not a corporation, carrying on a business such as Insulrock carried on, is doing business in the state is to look to the results. As before stated, it was the evident intention of Insulrock

to have its business promoted in the State of Arkansas when it allocated the sales territory to Warren H. Buchanan, doing business as Acoustics & Specialities Company. Insulrock carried out through its agent its own projects for having business solicited. It set up its own method for receiving orders for material and for filling those orders. While the methods carried on for promoting good will, soliciting purchases and filling orders were different from those described in the Green and Krnach cases, supra, they were designed to and did accomplish the same purposes.

It is shown in the affidavit attached to the memorandum brief of the plaintiff that the sales of Insulrock products within the State of Arkansas since July of 1950 amounted to almost one-half million square feet of roofing and acoustical sheets at a sales price of more than $150,000. There were more than twenty sales and they were made in the larger towns and cities of the state, extending from Clarksville in the West-central part of the state to El Dorado in the Southeast part of the state. All of these undisputed facts lead me to endorse the statement of District Judge Freed in the Krnach case when referring to the International Shoe Company case:

> "The Court concluded that systematic and continuous activities, resulting in a large volume of interstate business, were sufficient to subject the defendant to suit in Washington."

The record in this case is not devoid of a showing that there was some intrastate business. Three of the Insulrock corporation's officers and employees came to Arkansas when it was reported that defective material had resulted in injuries to the plaintiffs. One of them spent nine or ten days, and the other two were here for a day or two each. They all engaged in business activities while here, each of which was, of course, the act of Insulrock. These acts were of such a nature and had such results that they cannot be regarded as merely a temporary call to compromise a controversy. No suit had been filed against Insulrock at that time, and apparently the entire project of arriving at an equitable deduction for defective material was initiated and carried out by the agents of Insulrock. The presence and activities of the officers of Insulrock here no doubt turned out to the advantage of Insulrock since it was able to settle a $9,000 demand on the part of the contractors for $7,500.

For the foregoing reasons, I must hold and do hold that the motion of Insulrock Corporation and Smith & Kanzler Corporation to dismiss should be overruled.

Counsel for plaintiff will please prepare a precedent for order overruling motion and giving the defendants a reasonable time in which to file answer.