Mardis L. CHANDLER, Plaintiff,

v.

The G. W. GLADDER TOWING CO.,
Defendant.

Civ. No. 584.

United States District Court
E. D. Arkansas, E. D.

July 20, 1956.

House, Moses & Holmes, Thomas C. Trimble, Jr., Little Rock, Ark., for plaintiff.

Barber, Henry & Thurman, Austin McCaskill, Little Rock, Ark., for defendant.

LEMLEY, District Judge.

This cause, which is an action for personal injuries which plaintiff, a citizen of Arkansas, claims to have sustained as a result of the alleged negligence of employees of the defendant, a Missouri corporation, is now before the court upon the defendant's motion to dismiss for lack of jurisdiction over its person; said motion has been submitted upon affidavits and written briefs.

The defendant is the owner and operator of the motor vessel Emily Jean, and is engaged in the business of towing barges on the Mississippi River. The complaint alleges that on July 18, 1954, near the loading docks of the Triangle Pipe Line Company in Arkansas City, Arkansas, the defendant, while engaged in causing certain barges to be loaded with explosive fuel, negligently caused an explosion, as a result of which the plaintiff was thrown into the air and was injured by his subsequent fall to the ground. The defendant has no office or place of business in Arkansas, has not qualified to do business in this State, and has appointed no agent for service here. The plaintiff has attempted to bring the defendant into this court by service of summons upon the Secretary of State of the State of Arkansas under the provisions of Act 347 of 1947, Ark.Stats. § 27–340;[1] and the question now before us is as to the sufficiency of such service.

1. Insofar as here pertinent, that statute reads as follows: "Any non-resident * * * corporation not qualified under the Constitution and Laws of this State as to doing business herein, who shall do any business or perform any character of work or service in this State shall, by the doing of such business or the per-

In asking that this action be dismissed the defendant does not question the constitutionality of Act 347;[2] it does contend, however, that such activities as it may have performed in Arkansas have been exclusively in interstate commerce and do not amount to the doing of business in Arkansas, or the performance of work or service here so as to make it amenable to the provisions of the Act. The plaintiff argues, on the other hand, that the defendant at the time of the injury complained of, as well as before and since, has been doing business in the State, and that the statute is applicable.

In support of its motion the defendant has filed the affidavit of its transportation superintendent, Mr. Harry M. Smith, which affidavit is to the following effect:

That the defendant owns and operates one towing boat, namely, the motor vessel Emily Jean, and is engaged solely in the operation of said boat as an interstate carrier of bulk commodities, principally petroleum products, on inland waterways in the United States; that the defendant has never had any office or any employees working in Arkansas; that it has never "done business in the State of Arkansas"; that it owns no property there; and that it transports no commodities between local points in the State of Arkansas. That on July 18, 1954 at the time of the accident here involved, the Emily Jean, in the course of its usual operation, had at the direction of Triangle Pipeline Company placed three barges at the dock of said company to be loaded with gasoline; that the pipeline company owned the dock and the equipment used in the loading of the barges and was in charge of the loading operation; that the gasoline that was being loaded was owned by Martin Oil Company which had purchased it from the pipeline company; that the pipeline company had full charge of the loading operations; that defendant had no duty to load the gasoline and was not loading it, and had no interest in it, except to transport it to the Martin Oil Company at Cairo, Illinois and St. Louis, Missouri under its contract with the oil company.

Mr. Smith concludes his affidavit by saying that he "verily believes that (defendant) at the time of the * * * fire and explosion at Arkansas City, * * * was not doing business in the State of Arkansas, other than engaging in interstate commerce; that said (de-

---

forming of such work, or services, be deemed to have appointed the Secretary of State * * * to be the true and lawful attorney or agent of such nonresident, upon whom process may be served in any action accrued or accruing from the doing of such business, or the performing of such work, or service, or as an incident thereto by any such nonresident, or his, its or their agent, servant or employee. Service of such process shall be made by serving a copy of the process on the said Secretary of State, and such service shall be sufficient service upon the said non-resident of the State of Arkansas, provided that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff, or his attorney, to the defendant at his last known address, and the defendant's written return receipt, or the affidavit of the plaintiff, or his attorney, of compliance herewith are appended to the writ or process and entered in the office of the Clerk of the court wherein said cause is brought. * * * Service of summons when obtained up-on any such non-resident as above provided * * * shall be deemed sufficient service of summons and process to give to any of the courts of this State jurisdiction over the cause of action and over such non-resident defendant, or defendants, and shall warrant and authorize personal judgment against such non-resident defendant, or defendants, in the event that the plaintiff prevails in the action." While the defendant originally contended, among other things, that no copy of the process herein was ever mailed to it, the plaintiff thereafter filed an affidavit of service supported by his registry receipt and the defendant's return receipt, and we do not understand that defendant relies upon the alleged procedural defect just mentioned.

2. The constitutionality of that Act in its prospective application was upheld by the Supreme Court of Arkansas in Gillioz v. Kincannon, 213 Ark. 1010, 214 S.W.2d 212, after a consideration of the pertinent decisions of the Supreme Court of the United States.

fendant) has never conducted any business to affiant's knowledge, as an intrastate carrier in the State of Arkansas."

In support of his position that this court has jurisdiction the plaintiff has submitted his own affidavit to the effect that prior to the accident complained of the Emily Jean had called with barges for loading at the pipeline company's docks at Arkansas City from nine to eleven times during 1954, and that during said year and after the accident she docked there five or six more times, and that this course was continued throughout 1955; that on each occasion, in addition to the loading of the barges, the Emily Jean herself was fueled. Plaintiff also states that both the pipeline company and the defendant had duties to perform in connection with the loading of the barges, which duties are set out in some detail in his affidavit; plaintiff also says with regard to the fueling of the Emily Jean that such fueling was performed by her own crew, the employees of the pipeline company merely starting and stopping the flow of fuel, as directed by the ship's personnel. The plaintiff does not controvert Mr. Smith's statement that the defendant has never transported any cargoes intra-state within the State of Arkansas.

■ Assuming for present purposes that plaintiff's affidavit speaks the truth, it appears therefrom that the activities carried out by the defendant in Arkansas are purely interstate;[3] and in passing upon the contentions of the parties it is first necessary to determine whether or not Act 347 is applicable under such circumstances; that, of course, is a question of state law.

In that connection in Charles Keeshin, Inc., v. Gordon Johnson Co., D.C.Ark., 109 F.Supp. 939, 942, Judge Miller said:

"There is no federal statute, prescribing the manner of service of summons, applicable to the instant case, and since the service of summons was under the Arkansas proce-

dure, the validity of the service is to be determined by the requirements for service in this State. The first question is whether the State has provided for bringing the defendant, a foreign corporation, into its courts under the facts and circumstances existing in the cases. There is nothing to compel a state to exercise jurisdiction over a foreign corporation, and the extent to which a state chooses to exercise such jurisdiction is determined by the law of the state. However, if a state, by statute or otherwise, has purported to exercise jurisdiction over a foreign corporation, then the question may arise whether such state procedure violates the due process clause or the interstate commerce clause of the Federal Constitution. * * *

"If the latter question arises, it is to be determined by federal law, but the federal question is not reached for decision until it is determined that the state statute is broad enough to assert jurisdiction over the defendant in a particular case."

See also Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193; Fritchey v. Summar, D.C.Ark., 86 F.Supp. 391, 395, and Green v. Equitable Powder Mfg. Co., D.C.Ark., 99 F.Supp. 237, 241.

Act 347 was before the Supreme Court of Arkansas in Rodgers v. Howard, 215 Ark. 43, 219 S.W.2d 240, the facts in which case may be summarized as follows:

Campbell Soup Company, a foreign corporation not domesticated in Arkansas, shipped merchandise into the State in carload lots consigned to Stuart Grocery Co. of Nashville, Arkansas and other merchants; upon the arrival of a carload lot at Texarkana, Arkansas, the Hunter Transfer Company would open the car, break up the merchandise and deliver it to the several purchasers, including Stuart Grocery Company. Plaintiff purchased a can of soup so delivered to Stu-

---

3. See 15 C.J.S., Commerce, § 23; and Puget Sound Stevedoring Co. v. Tax Commission of State of Washington, 302 U.S. 90, 58 S.Ct. 72, 82 L.Ed. 68.

art Grocery Company, and became ill after eating it. Contending that Hunter Transfer Company was the agent of Campbell, and that the former's activities in opening the car and delivering the merchandise constituted the doing of business in Arkansas by the latter, plaintiff brought suit and obtained service under Act 347.

The Court held the service invalid, employing the following language:

"Also, without attempting now to delineate the permissible limits to which a State may go in using substituted service as the basis to support a judgment *in personam*, it is sufficient in this opinion to say—and we so hold—that the shipment of the Campbell Company in the case at bar preserved its inter-state character until the shipment reached the Stuart Grocery Company in Nashville, Arkansas, and that the acts of the Hunter Transfer Company, even if it should be said to be an agent of the Campbell Company, were transactions in inter-state commerce, and not within the scope or contemplation of Act 347 of 1947. * * *" 215 Ark. at pages 47–48, 219 S.W.2d at page 242.

As we construe that opinion, and particularly the language above quoted, it held that regardless of its power to do so the Legislature did not purport to subject foreign corporations to in personam jurisdiction by means of substituted service where, as here, the activities of such corporation within the state were exclusively interstate in character.

In speaking of the scope of Act 347, the Court in Fritchey v. Summar, supra, stated:

"Prior to the enactment of Act 347 * * *, the Arkansas Supreme Court, in cases under the service

statute in force at the time, held that service could not be had on a foreign corporation doing an exclusive interstate business in Arkansas. As stated in H. J. Heinz Co. v. Duke, 196 Ark. 180, 184, 116 S.W.2d 1039, 1041, * * *: 'Said act does not and could not authorize service on a foreign corporation doing an exclusive interstate business in Arkansas.'

* * * * * *

"In the decisions handed down by that court subsequent to the enactment of Act 347, it has adhered to the standards applied prior thereto, and has interpreted Act 347 as making no changes. * * *". 86 F. Supp. at page 395.

The Court then went on to quote from Rodgers v. Howard, supra.

In Chapman Chemical Co. v. Taylor, 215 Ark. 630, 222 S.W.2d 820, service on a foreign corporation under Act 347 was upheld, but there the activities of the defendant in Arkansas possessed intrastate aspects not present here; the same thing may be said with reference to Green v. Equitable Powder Mfg. Co., supra. In Gillioz v. Kincannon, supra, the activities involved were purely intrastate. The case of American Farmers Insurance Co. of Phoenix, Ariz. v. Thomason, 217 Ark. 705, 234 S.W.2d 37, cited by the plaintiff, has no bearing on the immediate problem presented here.

We do not believe that the instant case can be distinguished in principle from Rodgers v. Howard, and in view of the decision in that case we conclude that the defendant's motion must be sustained, and that the complaint herein must be dismissed. An order to that effect is today being signed and mailed to the Clerk for entry.