**In the Matter of Gilbert R. TURNER, T/A Turner Brothers Sign Company, Bankrupt.**

**No. 29–59.**

United States District Court
M. D. North Carolina,
Greensboro Division.

Aug. 11, 1960.

William E. Comer, Greensboro, N. C., for petitioner.

Lacy L. Lucas, Jr., Greensboro, N. C., for respondent.

EDWIN M. STANLEY, District Judge.

This matter is before the court on the petition of Gilbert R. Turner, T/A Turner Brothers Sign Company, the bankrupt, for review of an order of the Referee in Bankruptcy, dated February 11, 1960, which denied the discharge of the bankrupt.

The bankrupt filed a voluntary petition for bankruptcy on July 14, 1959, and was adjudged a bankrupt on the same date.

On November 11, 1959, the Trustee in Bankruptcy timely filed objections to the discharge of the bankrupt. The Referee, after hearing, made certain findings of fact and conclusions of law, which are contained in the order now before the court for review. In his order, the Referee found and concluded that the evidence was not sufficient to support the denial of the discharge upon Specifications 1, 2, 4, 5 and 7, but was sufficient to deny the discharge upon Specifications 3 and 6. Since the Trustee has not asked for review of the order dismissing Specifications 1, 2, 4, 5 and 7, it is only necessary to discuss those specifications upon which the discharge was denied.

The third specification objected to the discharge under Section 14, c(1) of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c(1), for that the bankrupt had committed an offense punishable by

imprisonment as provided under 18 U.S.C. § 152, by knowingly and fraudulently making a false oath and not listing a share of stock in Atlantic Signs, Inc., and the sixth specification objected to the discharge under section 14, c(4) of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c(4), for that within the twelve month period immediately preceding the filing of the petition, the bankrupt transferred, removed and concealed certain items of personal property with intent to hinder, delay and defraud his creditors.

In 1954, the bankrupt and his brother, Edward V. Turner, Jr., organized a partnership under the style and trade name of Turner Brothers Sign Company. The partnership was dissolved in August, 1957, after which the bankrupt became the sole owner of said business.

Shortly after the dissolution of the partnership, the proprietorship began experiencing financial difficulties. The bankrupt's grandmother, Mrs. A. C. Turner, held a chattel mortgage in the amount of $6,000 on certain vehicles owned by the bankrupt, and his wife, Elizabeth Turner, held a chattel mortgage in the amount of $15,000 on all the equipment used in the bankrupt's business.

In May, 1959, the bankrupt employed counsel to organize a new corporation under the name of Atlantic Signs, Inc. The corporation issued three shares of stock, one share to the bankrupt, one share to the bankrupt's wife, and one share to Harold B. Elliott, a cousin of the bankrupt and a salesman for the corporation. The sum of $100 was paid for each share of stock, and the corporation commenced business with a paid-in capital of $300. The stock was issued on April 28, 1959, and the corporation commenced business on June 4, 1959. The bankrupt was president and general manager of the new corporation.

In June, 1959, the mortgages held by the bankrupt's wife and grandmother were foreclosed. The foreclosure sales were held at the same time, and Atlantic Signs, Inc., purchased all the assets, except two or three of the vehicles, and paid the bid price by the execution of new mortgages on the same equipment to the wife and grandmother of the bankrupt.

The bankrupt did not list in his schedule the assets described in the mortgages and transferred to Atlantic Signs, Inc., at the time of the purported foreclosure sales. Neither did he list in his schedule the share of stock he owned in Atlantic Signs, Inc.

The Referee, without finding that either the chattel mortgages or the foreclosure sales were invalid, found and concluded that the assets covered by the chattel mortgages were conveyed by the bankrupt to Atlantic Signs, Inc., with intent to hinder, delay and defraud his creditors.

The court is of the opinion that a finding of invalidity with respect to the purported mortgages and foreclosure sales was necessary to support the conclusions reached by the Referee with reference to the sixth specification, and concludes that the record does not support a denial of the discharge on this specification. In other words, if the mortgages and foreclosure sales were valid, the transfer of the assets to the corporation, which was the high bidder at the foreclosure sale, would not constitute a transfer with intent to hinder, delay and defraud creditors of the bankrupt.

But a more serious problem is presented with reference to the third specification. The share of stock owned by the bankrupt represented a one-third ownership of the corporation. The sum of $100 had been paid for the share of the stock. The bankrupt was president and general manager of the corporation, and the other two shares of stock were owned by his wife and cousin. The fact that the bankrupt owned the share of stock, and did not list same in his schedule of assets, stands unchallenged. The only question for determination is whether the failure to list the share of stock constituted an offense punishable

by imprisonment, as provided under 18 U.S.C.A. § 152.[1]

At the first meeting of the creditors held on August 5, 1959, the bankrupt testified with respect to the share of stock as follows:

"Q. Now, Mr. Turner, do you own any stock in any corporation? A. No. I don't.

"Q. Are you interested in any corporation? A. Oh. Now?

"Q. Yes. A. Oh, oh. Yes, sir.

"Q. What corporation is that? A. Atlantic Signs, Incorporated.

\* \* \* \* \* \*

"Q. How much stock do you own? A. I have just one share.

"Q. And what did you pay for that share? A. $100.

"Q. Is that share of stock listed on your schedule of assets and liabilities? A. I don't know.

\* \* \* \* \* \*

"Q. You say you own one share of stock? A. That's right.

"Q. And that share of stock is not listed on your schedule, is that so? A. I don't imagine so. \* \* \* "

At a hearing held on the objections to the discharge on January 7, 1960, the bankrupt testified that his reason for not listing his share of stock in Atlantic Signs, Inc., was that he did not think of it; that he did not think of one share as being one-third ownership of the business; and that when the caption "Stocks and Bonds" appeared in the schedule, he did not think of the stock.

The bankrupt made a solemn oath that his schedule contained the statement of all of his property, real and personal, according to his best knowledge, information and belief. He stated he owned no corporate stock. The fact that this statement was false is admitted. The Trus-

tee, having shown that the omission was false, sustained his burden of showing reasonable grounds for believing the omission was intentional, and the burden was then shifted to the bankrupt to prove that the omission was innocent. Section 14c of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. c. Duggins v. Heffron, 9 Cir., 1942, 128 F.2d 546; Coghlan v. United States, 8 Cir., 1945, 147 F.2d 233; Mountain Trust Bank v. Shifflett, 4 Cir., 1958, 255 F.2d 718; In re Beam, D.C. N.D.Ala.1958, 163 F.Supp. 333.

■ Counsel for the petitioner argues that the omission was unintentional since the bankrupt was only seeking a discharge from his business obligations, and that the record as a whole indicates that only business assets and liabilities were listed in the schedule. But this is hardly consistent with the fact that the bankrupt first denied that he owned any corporate stock, and after an admission of ownership was later adduced his only explanation for not listing the stock was that he did not think of it. It is rather incredible to suppose that the bankrupt had forgotten such an important asset, particularly when it had only been acquired a short time prior to the bankruptcy, and constituted his ownership in a business upon which he depended for a livelihood, and there is certainly a justifiable inference that the bankrupt knowingly and purposely withheld disclosure of his ownership in his newly acquired business from the Trustee. In order for a harassed debtor to be relieved and discharged from his debts, there is a minimum requirement that he make an honest and good faith disclosure of all of his assets to the end that they might be equitably distributed among his creditors. In re Reidy, D.C.N.J.1935, 12 F.Supp. 370.

■ It is uniformly held that the court is required to accept the findings

---

1. 18 U.S.C.A. "§ 152. *Concealment of assets; false oaths and claims; bribery*

    \* \* \* \* \*

    "Whoever knowingly and fraudulently makes a false oath or account in or in

relation to any bankruptcy proceeding; \* \* \*

\* \* \* \*

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

of fact in the Referee's report, unless clearly erroneous. General Order in Bankruptcy No. 47, 11 U.S.C.A. following section 53; Rule 53(e) (2), Federal Rules of Civil Procedure, 28 U.S.C.A.; Mountain Trust Company v. Shifflett, supra; In re Supnick, D.C.E.D.Pa.1958, 160 F.Supp. 355.

It is concluded that the evidence as a whole, and the reasonable inferences to be drawn therefrom, clearly support the findings and conclusion of the Referee in regard to the third specification. It follows that the bankrupt should be denied his discharge.

Counsel for Trustee will present an order in conformity with this opinion.