**ARK–LA FEED & FERTILIZER COMPANY, Appellant,**

v.

**MARCO CHEMICAL COMPANY, Appellee.**

**No. 16614.**

United States Court of Appeals
Eighth Circuit.

June 26, 1961.

8. 3 Moore's Federal Practice § 14.04, p. 412.

Oliver M. Clegg, Magnolia, Ark., Keith, Clegg & Eckert, Magnolia, Ark., on the brief, for appellant.

J. W. Barron, Little Rock, Ark., for appellee.

Before VOGEL and BLACKMUN, Circuit Judges, and BECK, District Judge.

BECK, District Judge.

This appeal, in a diversity suit, is from a final judgment quashing service of the summons and the complaint on the ground that the activities of the defendant corporation within Arkansas were not such as to permit service of process on the Secretary of State under Arkansas law.[1]

The factual situation, relied on by both parties, except as shown in the foot-note, and submitted as being material on all of the issues raised by the motion are agreed on and settled by stipulation and may be summarized as follows:

That Marco Chemical Company, the appellee, defendant below, hereinafter referred to as Marco, is a foreign corporation, organized and existing under the laws of Texas with its office in Fort Worth of that state. It is principally engaged in selling animal feeds and ingredients therefor, including a product used as an additive and known in the trade as B–75. Marco, at no time, has had, nor at the time this action arose, did it have or maintain in the state of Arkansas, any office, branch office, warehouse or any place of business whatsoever. Neither has it, within that state, had, or maintained any physical facilities, or any stock of merchandise, nor does it own or lease real or personal property therein situated. It has no bank account in that state and none of its salesmen, agents or representatives are residents thereof. Its dealings with the appellant, Ark-La Feed & Fertilizer Company of Magnolia, Arkansas, the plaintiff below, hereinafter referred to as Ark-La, followed a pattern under which Ark-La ordered the Marco products either by telephoning Marco's Fort Worth Office or by mail addressed to that place. Prices to Ark-La on the B–75 were on a F.O.B. Fort Worth basis, on all others, F.O.B., Magnolia. Payments were either by drawing and depositing in Fort Worth by Marco of drafts on Ark-La, or by its checks mailed to Marco at Fort Worth. Deliveries were direct from the Fort Worth plant to Ark-La at Magnolia, in Marco's own trucks manned by

1. Section 27–340 Ark.Stats.1947, insofar as it bears on the validity of such service and on the questions which are before the court on this appeal, provides:

"Any non-resident person, firm, partnership, general or limited, or any corporation not qualified under the Constitution, and Laws of this State as to doing business herein, who shall do any business or perform any character of work or service in this State shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the Secretary of State, or his successor or successors in office, to be the true and lawful attorney or agent of such non-resident, upon whom process may be served in any action accrued or accruing from the doing of such business, or the performing of such work, or service, or as an incident thereto by any such non-resident, or his, its or their agent, servant or employee."

its drivers and the unloading into Ark-La's receiving tanks by a pumping process operated from the Marco trucks and by its drivers. Those drivers did not collect as they made delivery and had no authority to do so.

Another provision in the stipulation not covered by the foregoing summary is as follows:

"Defendant mailed from its office in Fort Worth, Texas to plaintiff Ark-La Feed & Fertilizer Company a copy of a drawing showing a proposed layout of pipes and tanks for receiving B–75 * * * *".[2]

And one more, treated by counsel for Marco as immaterial, agreed on however as being true, but introduced into the record as though defendant had objected to its admissibility on grounds of immateriality and irrelevancy, provides:

"In compliance with Act 108 of 1951 of the General Assembly of Arkansas, defendant has registered with the Arkansas State Plant Board such of its products as it may have occasion to ship into Arkansas and which are required to be registered under said Act, and has filed the quarterly tonnage reports as required by said Act. The current registration is dated June 18, 1956. A true copy of the tonnage report so filed for the quarter ending December 31, 1959, is hereto attached as Exhibit "C". Said registration was accomplished by mail from Fort Worth, Texas to the Plant Board in Little Rock, Arkansas, while the quarterly reports were likewise mailed from Fort Worth, Texas to the Plant Board in Little Rock, accompanied by Marco's remittance covering the statutory inspection fee at the rate of ten cents per ton."

The District Judge alluding to and relying on his earlier decision in McAvoy v. Texas Eastern Transmission Corp., D.C.W.D.Ark.1960, 185 F.Supp. 784, and the authorities therein relied on, declared himself not convinced that the highest court in Arkansas was prepared to go as far as International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and seemingly that this record required the application of the rules adhered to in Crawford v. Louisville Silo & Tank Co., 166 Ark. 88, 265 S.W. 355, Citizens' Union National Bank v. Thweatt, 166 Ark. 269, 265 S.W. 955 and Rodgers v. Howard, 1949, 215 Ark. 43, 219 S.W. 2d 240. With that holding he rejected as of little or any significance the fact of the situs of the alleged damage in this case having been in Arkansas, while in McAvoy he concluded otherwise as he said [185 F.Supp. 790]:

"* * * had the explosion of the pipeline occurred here, the Court might be able to say, as a matter of Arkansas Law, that jurisdiction with respect to Rockwell exists * * *."

That difference and the emphasis given to it in McAvoy, in part are reasons, according to Ark-La's counsel why the results below should have been otherwise and therefore to be reversed.

"Historically", said the court, in International Shoe and as part of the background for the rule there announced as reported in 326 U.S. 310, 66 S.Ct. 158, 90 L.Ed. 95, 161 A.L.R. 1057:

"* * * the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 733, 24 L.Ed. 565, [572]. But now that the capias ad respondum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in perso-

---

2. The drawing referred to in the stipulation is in the form of an Exhibit marked "B", which describes the mechanics for receiving the B–75 product from the Marco trucks.

nam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, [283], 132 A.L.R. 1357. See Holmes, J., in McDonald v. Mabee, 243 U.S. 90, 91, 37 S.Ct. 343, 61 L.Ed. 608, [609], L.R.A.1917F, 458. Compare Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 316, 319, 63 S.Ct. 602, 604, 606, 87 L.Ed. 777, 781, 783, 145 A.L.R. 1113. See Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375; Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Young v. Masci, 289 U.S. 253, 53 S.Ct. 599, 77 L.Ed. 1158, 88 A.L.R. 170."

Such contacts by a noncomplying corporation are now under the impact of free flowing commerce and exigencies thereby created regarded as fully satisfied if its activities are continuous and systematic and such as to give rise to the liabilities asserted in the suit. International Shoe Co. v. Washington, supra, St. Clair v. Cox, 106 U.S. 350, 355, 1 S.Ct. 354, 27 L.Ed. 222; Connecticut Mutual Life Insurance Co. v. Spratley, 172 U.S. 602, 19 S.Ct. 308, 43 L.Ed. 569, Pennsylvania Lumbermen's Mutual Fire Insurance Co. v. Meyer, 197 U.S. 407, 414, 415, 25 S.Ct. 483, 49 L.Ed. 810, Commercial Mutual Accident Co. v. Davis, 213 U.S. 245, 255, 256, 29 S.Ct. 445, 53 L.Ed. 782, International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479 and St. Louis S. W. R. Co. v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486.

But while a state under that rule has a right to elect to what extent it will allow modifications of Pennoyer v. Neff, supra, and permit the activity within the state standards to control, it is not required to do so. A state can continue adherence to the earlier expressed concepts, but on the other hand, it may, if it affirmatively chooses to do so follow the more liberal rule or others more demanding. As said in Perkins v. Benguet Mining Co., 342 U.S. 437, 72 S.Ct. 413, 418, 96 L.Ed. 485:

"Using the tests mentioned above we find no requirement of federal due process that either *prohibits* Ohio from opening its courts to the cause of action here presented or *compels* Ohio to do so. This conforms to the realistic reasoning in International Shoe Co. v. Washington * * *."

Again, in Partin v. Michaels Art Bronze Co., 3 Cir., 1953, 202 F.2d 541, 542:

"Because a state may exercise jurisdiction it does not follow that it does do so, much less that it must. 'A state does not necessarily exercise judicial jurisdiction through any particular court, and it may not choose to exercise the judicial jurisdiction which it has through any court.' Restatement, Conflict of Laws, § 73, Comment a. 'The existence of jurisdiction in a state does not depend upon its exercise. A state may have jurisdiction although it never exercises it.' Restatement, Conflict of Laws, § 46, Comment f.

"This requirement that the state provide for the exercise of jurisdiction in a particular set of circumstances is emphasized by the language of Restatement, Judgments, §§ 22 and 23. Section 22 provides:

"'A court by proper service of process may acquire jurisdiction over an individual not domiciled within the State who carries on a business in the State, as to causes of action arising out of the business done in the State, *if a statute of the State so provides at the time when the cause of action arises.*' (Italics supplied.)

"Section 23 provides:

"'A court by proper service of process may acquire jurisdiction over an individual not domiciled within the State who does acts or owns things in a State which are of

a sort dangerous to life or property, as to causes of action arising out of such acts or such ownership, *if a statute of the State so provides at the time when the cause of action arises.'* " (Italics supplied.)

Hence, we are in the first instance, not concerned if "doing of business", "performing of work" or "service", are terms embraced by Marco's operations within Arkansas, but only with the question, has that state under its cases, indicated adoption of the "solicitation" rule in International Shoe.

More explicitly two questions arise in cases of this kind: (1) has the state where the case is brought by legislation or under its case law, specified the circumstances when substituted service for purpose of in personam jurisdiction may be used; and (2) if so is the asserted jurisdiction within constitutional limits. Partin v. Michaels Art Bronze Co., supra.

As for the treatment of those questions in any given case, Judge Hand in Bomze v. Nardis Sportswear, Inc., 2 Cir., 1948, 165 F.2d 33, 35 declares:

"* * * thus the first question is whether the service was valid under the New York decisions. If we conclude that it was not, of course the case ends; but, if we conclude that it was, there arises the second question: i. e. whether the service was valid under the Constitution."

And similarly in Pulson v. American Rolling Mill Co., 1 Cir., 1948, 170 F.2d 193, 194–195:

"There are two parts to the question whether a foreign corporation can be held subject to suit within a state. The first is a question of state law: has the state provided for bringing the foreign corporation into its courts under the circumstances of the case presented? There is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature. If the state has purported to exercise jurisdiction over the foreign corporation, then the question may arise whether such attempt violates the due process clause or the interstate commerce clause of the federal constitution. Const. art. 1, § 8, cl. 3; Amend. 14. This is a federal question and, of course, the state authorities are not controlling. But it is a question which is not reached for decision until it is found that the State statute is broad enough to assert jurisdiction over the defendant in a particular situation."

See also Kelley v. Delaware L. & W. R. Co., 1 Cir., 1948, 170 F.2d 195, 196.

Our primary concern then, is not, as Ark-La contends, whether Marco's operations in the state were within the constitutional limits announced in International Shoe, but rather has Arkansas changed its old concepts.

We turn then to the Arkansas cases, state law as construed by its court, being held as conclusive in cases of this kind. A point on which under this record there is no dispute.

Thus, as held in Kansas City Structural Steel Co. v. Arkansas, 269 U.S. 148, 150, 46 S.Ct. 59, 60, 70 L.Ed. 204, a case analogous to this one:

"We accept the decision of the Supreme Court of Arkansas as to what constitutes the doing of business in that state within the meaning of its own laws.",

and in Perkins v. Benguet Mining Co., supra, also analogous:

"Consideration of the circumstances which, under the law of Ohio, ultimately will determine whether the courts of that State will choose to take jurisdiction over the corporation is reserved for the courts of that State."

See also Roark v. American Distilling Co., 8 Cir., 1938, 97 F.2d 297 and F.R. Civ.P. Rule 4(d) (3) and (7), 28 U.S. C.A.

Rodgers v. Howard, supra, involving an unlicensed foreign corporation shipping goods into Arkansas in one shipment by common carrier, having it there subdivided by an intrastate transportation company [3] and thereafter delivered to the corporation's several customers, held such acts transactions in *interstate commerce* and not within the scope of the Arkansas Act.

There as the court dealt with questions before it in the earlier cases of Gillioz v. Kincannon, 213 Ark. 1010, 214 S.W.2d 212, Crawford v. Louisville Silo & Tank Co. and Citizens' Union National Bank v. Thweatt, supra, and the contentions that the rule in the last two mentioned cases had been changed by the Act, pointed out, as we have [215 Ark. 43, 219 S.W.2d 242]:

"The question now becomes, whether a holding by us would be within the rule of such cases, if we should hold that the acts performed by the Hunter Transfer Company for the Campbell Company—even though in inter-state commerce—were sufficient to support substituted service in actions in personam in the Arkansas courts. We pass this question as one of unnecessary speculation. Whether the Legislature could validly enact such legislation is not for us to decide at this time. *We hold that Act 347 of 1947 was not intended to change the rule concerning the breaking of the journey of interstate shipments as announced in the cases of Crawford v. Louisville Silo & Tank Co., supra, and Citizens' Union Nat. Bank v. Thweatt, supra. Until such a change of the rule in these cases be attempted by the Legislature, we need not speculate on its constitutionality.*

"Also, without attempting now to delineate the permissible limits to which a State may go in using substituted service as the basis to support a judgment in personam, it is sufficient in this opinion to say—and we so hold—that the shipment of the Campbell Company in the case at bar preserved its inter-state character until the shipment reached the Stuart Grocery Company in Nashville, Arkansas, and that the acts of the Hunter Transfer Company, even if it should be said to be an agent of the Campbell Company, were transactions in inter-state commerce, and not within the scope or contemplation of Act 347 of 1947. *In short, we hold the Crawford v. Louisville Silo & Tank Co. and Citizens' Union Nat. Bank v. Thweatt cases to be ruling in the case at bar; and therefore we deny the petitioner's motion filed in this Court on June 26, 1948.*" (Italics supplied.)

Against as emphatic declarations as those, Ark-La nevertheless insists that the same court, less than three months later in Chapman Chemical Co. v. Taylor, 1949, 215 Ark. 630, 222 S.W.2d 820, completely reversed its position, without the legislative must, announced as a prerequisite in Rodgers and that the rule in International Shoe is now the law of the state.

The obvious answer is that it wasn't necessary to change the rule in the earlier cases to arrive at the results in Chapman. This the court recognized in the comments it made as it referred to Frene v. Louisville Cement Co., 1943, 77 U.S. App.D.C. 129, 134 F.2d 511, 146 A.L.R. 926:

"It was there said that the mere solicitation of business whether on a casual or occasional or regular, continuous and long continued basis does not constitute doing business in a foreign state, and it may be added that filling orders thus obtained by shipping goods in interstate commerce would not constitute doing business. But it was said in addition, 'Consequently it is

---

3. Hunter Transportation Company.

(now) [4] clear that if, in addition to a regular course of solicitation, other business activities are carried on, such as maintaining a warehouse, making deliveries, etc., the corporation is "present" for jurisdictional purposes. And very little more than "mere solicitation" is required to bring about this result.' " (Footnote added). [215 Ark. 630, 222 S.W.2d 823.]

But it commented further:

"The facts herein recited constitute something more than the creation of good will or solicitation of business, and while it was shown that none of the Chapman products were stored for delivery in this State, it was shown that a portion thereof was actually brought into and delivered in this State by the company's authorized representatives, in fact, its President, himself, and this was done for the purpose of making the test which was made in this State which induced the sale of the very product, the use of which, for the purpose intended, resulted in the damage for the compensation of which this suit was brought."

Explicit as these statements are, that the court in Chapman intended no variations from Rodgers and the earlier cases, we find implicit ones also, in no reference in Chapman having been made to the earlier cases and in none to the reasons or policies which could have warranted the timing urgency implied.

Not overlooked, are other federal district court cases in Arkansas, relied on by Ark-La, and the court's comment in McAvoy, that the situs of the alleged damage had it been in Arkansas, conceivably could have brought different results. As to these, suffice it to say, that it is the expressions of a state's high courts which are controlling on the point hereinbefore discussed and not the dis-

trict courts of the United States. Kansas City Structural Steel Co. v. Arkansas; Perkins v. Benguet Mining Co. and Roark v. American Distilling Co., supra.

■ As to Arkansas cases, also to some extent relied on by Ark-La, but not heretofore discussed, we regard them as not in point under the facts. The same may be said as to W. H. Elliott & Sons Co. v. Nuodex Products Co., 1 Cir., 1957, 243 F.2d 116, 121, cited as supporting the contention that Marco's registering with the Arkansas State Plant Board such of its products as it might have occasion to ship into the state, constituted "doing of business", "performing of work or service", under the Act.

Thus, while the court in that case, pointed out that the foreign corporation could not legally have entered into the state without registering, it mentioned: "Thus the damage complained of here 'is accounted for only by the defendant's activities in New Hampshire.' " to which there was added:

"Moreover, it is vitally significant that Nuodex did much more than merely register its product in New Hampshire, as detailed in the lower court's opinion. The district court found that there was a continuous and systematic course of business activity in the state by Nuodex through Litter. This activity included efforts to increase the sales of Super Ad-It in New Hampshire. Although the sale that resulted in the damage complained of here was made by Litter to King in Massachusetts, the record in addition reveals that retail packages of Super Ad-It were getting into the state either by direct sales or other distribution routes. All these various methods of distributing the substance in question were part and parcel of Nuodex' over-all sales program."

---

4. Marco's reference on page 13 of its brief of inadvertent error by Ark-La in omitting the word "not" between "is" and

"clear" is a mistake. The word (now) is as it appears in the text.

More on the difference between that case and this one is in one of the two concurring opinions:

"In the Pulson case we took the view that the applicable Massachusetts statute as interpreted by the Supreme Judicial Court of that Commonwealth was not broad enough, in view of the limited local activities of the foreign corporation there involved, to subject it to suit in Massachusetts. Thus in that case we did not reach the federal question of the limitation on state power imposed by the due process clause of the Fourteenth Amendment. I think the situation in New Hampshire is different. In my opinion the New Hampshire statute, unlike that of Massachusetts, has not been limited by judicial decision to restrict the scope of state power short of federal constitutional bounds.",

and in the other:

"Of course it is true that a state is free to impose additional 'requirements' to the exercise of personal jurisdiction over foreign corporations, beyond the minimal requirements of the due process clause. However, I fail to find in the New Hampshire statute or in the New Hampshire court decisions any indication that New Hamphire has undertaken, as a matter of local law, to impose any such additional requirements * * *."

To those distinctions we add that a foreign corporation to be able legally to engage in interstate commerce must comply with the applicable state registration act, a step or a part in the whole of the interstate transaction and a part of the uninterrupted interstate commerce journey which, according to the Arkansas courts, is not within the Act.

Here, as in Rodgers, the District Court, had a factual situation not materially different from the one in Rodgers, where the Arkansas court as it held to earlier cases, had before it the custom of the defendant corporation's traveling salesmen soliciting and taking orders in Arkansas, in forwarding them to the New Jersey home office for acceptance or rejection, the practice of Arkansas' customers in some cases ordering direct, in shipments into Arkansas in bulk being there subdivided and delivered by the Hunter Transportation Company, with the only differences being those referred to in our summary of stipulated facts. We hold those differences not material or significant, but parts only of transactions referred to in Rodgers, Crawford, and Citizens' Union National Bank, supra, as transactions in interstate commerce and, therefore, not within the Act.

We are in agreement that the District Court ruled correctly on the motion to quash and in entering final judgment for dismissal.

Affirmed.

BLACKMUN, Circuit Judge (concurring).

I regard this case, as did Judge Henley below, as "an extremely close one". The question is whether the Arkansas law, as interpreted by that state's Supreme Court and as applied to the facts here, compels us to conclude that the case is governed by Rodgers v. Howard, 215 Ark. 43, 219 S.W.2d 240, on the one hand, or by Chapman Chemical Co. v. Taylor, 215 Ark. 630, 222 S.W.2d 820; on the other. Chapman followed Rodgers within three months in 1949 but did not cite the earlier case. Each apparently involved an Arkansas damage situs. If the present case were the first to be decided under the Arkansas statute or if this court were in a position to formulate Arkansas law, I suspect that I would be influenced in favor of Arkansas jurisdiction here by (a) the fact that the governing statute, No. 347 of Acts 1947, now found as § 27–340 of Ark.Stats. 1947, was enacted at the very first legislative session following International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and thus seemingly was influenced and prompted by that Supreme Court decision, see Leflar,

*Conflict of Laws*, 1948–9, 3 Ark.Law Rev. 18, 23, and American Farmers Ins. Co. v. Thomason, 1950, 217 Ark. 705, 234 S.W.2d 37, 39, footnote 3; (b) the Arkansas court's apparent approval in 1948, in Gillioz v. Kincannon, 213 Ark. 1010, 214 S.W.2d 212, 214, of Dean Leflar's statement in 1 Ark.Law Rev. 201, that "The principal purpose of Act 347 of 1947 was to extend the circumstances in which Arkansas courts may exercise personal jurisdiction to render judgments in personam on constructive service against non-resident defendants in suits on causes of action arising out of acts done by such defendants in Arkansas"; and (c) the general and recognizable trend of the judicial decisions in favor of a broad rather than a narrow concept of jurisdiction, Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F.2d 511, 516; International Shoe Co. v. Washington, supra; Perkins v. Benguet Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283; compare Judge Miller's comments in Fritchey v. Summar, D.C.W.D.Ark.1949, 86 F.Supp. 391, 396.

Gillioz, however, was followed by Rodgers, a case factually similar to this one, where the court, while presented with an opportunity expansively to interpret its then recent statute in the light of International Shoe, definitely declined so to do and was content to characterize the statute as "not intended to change the rule concerning the breaking of the journey of interstate shipments", at page 242 of 219 S.W.2d. See Case Note *Foreign Corporations—"Doing Business"*, 1953, 7 Ark.L.Rev. 403, 405, and compare Leflar, *The Law of Conflict of Laws*, 1959, § 42, p. 71. Rodgers has not been overruled, limited or judicially criticized, so far as I can determine, and, with Chapman involving stronger and distinguishable facts, thus stands unmolested in the Arkansas reports. Rodgers was last recognized, as to this point, although with neither approval nor disapproval, in Hot Springs School Dist. v. Surface Combustion Corp., 1953, 222 Ark. 594, 261 S.W.2d 769, 771.

This leaves me in the position where I am not convinced that Judge Henley's conclusion is not a permissible one and that until the Supreme Court of the State of Arkansas speaks otherwise, "no basis exists for our interference with the trial court's determination of the Arkansas law". National Bank of Eastern Ark. v. General Mills, Inc., 8 Cir., 283 F.2d 574, 578. This to me is the necessary and simple solution to the present appeal.*

---

\* I feel, furthermore, that this is in line with the interpretation given the Arkansas substituted service statutes in nine separate opinions by experienced federal judges in that state. McWhorter v. Anchor Serum Co., D.C.W.D.Ark.1947, 72 F.Supp. 437; Fritchey v. Summar, D.C.W.D.Ark.1949, 86 F.Supp. 391; American Casualty Co. v. Harrison, D.C. W.D.Ark.1951, 96 F.Supp. 537; Green v. Equitable Powder Mfg. Co., D.C.W.D. Ark.1951, 99 F.Supp. 237; Henderson v. Rounds & Potter Lumber Co., D.C.W.D. Ark.1951, 99 F.Supp. 376; Charles Keeshin, Inc. v. Gordon Johnson Co., D.C. W.D.Ark.1952, 109 F.Supp. 939, all by Judge Miller; Tiner v. Insulrock Corp., D.C.E.D.Ark.1954, 120 F.Supp. 11, by Judge Trimble; Chandler v. G. W. Gladder Towing Co., D.C.E.D.Ark.1956, 143 F.Supp. 568, by Judge Lemley; McAvoy v. Texas Eastern Transmission Corporation, D.C.W.D.Ark.1960, 185 F.Supp. 784, by Judge Henley; see Bruner v. Republic Acceptance Corporation, D.C.E.D.Ark. 1961, 191 F.Supp. 200, 206. These decisions seem to me to be generally consistent with one another, even though a conclusion in favor of jurisdiction was reached in four of them and a conclusion against jurisdiction was reached in the other five.